## HOWELL BISHOP v. THE STATE.

1. CHARGE ON WEIGHT OF EVIDENCE.—On the following charge given a jury, viz, "in criminal cases the jury must discard from their consideration any part or the whole of the testimony of any witness that they may regard as improbable or untrue, and find their verdict on such evidence as they may regard as true and worthy of credit : " *Held*, a charge upon the weight of evidence and error, because, (1st.) There is no difference between civil and criminal cases as to the right of the jury freely to weigh the evidence and find according to their convictions of its truth or falsity; (2d.) Though the improbability of a statement by a witness may diminish his credibility, there is no rule of law which requires a jury to discard it from their consideration.

2. PRACTICE—WHAT ERRORS IN CHARGE NOT EXCEPTED TO WILL REQUIRE A REVERSAL.—Though a charge clearly erroneous be objected to for the first time in this court on appeal, yet, if it relates to a material matter and was calculated to mislead the jury to defendant's injury, it will constitute cause for a reversal.

3. PRACTICE.—A charge upon the weight of evidence, if excepted to at the time by defendant, is made by statute an express ground for reversal; but if not excepted to at the time, but the error is presented for the first time in a motion for a new trial, then its consideration by the Supreme Court is subject to another and very different rule, which is, was such error, under all the circumstances as exhibited in the record, calculated to injure the rights of the defendant?

4. PRACTICE.—A party who makes his objection to judicial action prejudicial to him, at the proper time, is entitled to have his objection

more favorably considered than if it had been inopportunely de-
layed.

5. CHARGE OF THE COURT.—It is only necessary to give such instruc-
tions as are applicable to every legitimate deduction which the jury
may draw from the facts.

6. THEFT—CHARGE OF COURT.—When on the trial of one charged
with theft the testimony is of such a character as to require the
court to inform the jury what facts would rebut the presumption of
a fraudulent taking, an omission to give such information in the
charge is a material error calculated to injure the rights of the de-
fendant by leaving the jury to decide the law as well as the facts of
the case.

APPEAL from Navarro.   Tried below before the Hon. F.
P. Wood.

*Wm. Croft,* for appellant, cited Mullins *v.* The State, 37
Tex., 337; Williams *v.* The State, 34 Tex., 558; Paschal's
Dig., arts. 3385–3389; Kay *v.* The State, 40 Tex., 29.

*George Clark, Attorney General,* for the State.

ROBERTS, CHIEF JUSTICE.—The defendant was convicted
for the theft of a certain cow, the property of Mrs. Lizzie
Hill, and his punishment assessed at two years' confine-
ment in the penitentiary.

The evidence was reasonably satisfactory that the cow
was the property of Mrs. Lizzie Hill, though it was run-
ning in the range, about four years old, and unbranded,
and she did not know that she had any such animal un-
branded, and she had not seen it for eighteen months.
She refused to sell the cow unless she could see it.   There
was some evidence tending to show that Bishop knew that
the cow belonged to Mrs. Lizzie Hill.

The defendant proved that she said she did not claim
any cattle as hers that were not branded.   This she de-
nied.   He also proved by George Adams, nephew of
Mrs. Lizzie Hill, and who attended to Mrs. Hill's cattle
and lived with her, that he was present when Bishop

bought this cow in a certain store in Corsicana from a man by the name of Keel, and that he went with them to a certain place at the junction of Post Oak and Elm creeks, where they found the cow on the same day. He further stated that he saw Keel give Bishop a list of marks and brands to collect.

Defendant proved by Clary that he saw Keel and Bishop at the same store about the same time, and heard them talking about some marks and brands. It was proved that Keel had been convicted and sent to the penitentiary for stealing cattle in Navarro county.

The evidence of appropriation of the property by Bishop was that the animal was found in his brand, with the original mark (which was Mrs. Hill's) changed into his mark, though it is not shown at what time it was done.

The version of the evidence, which may be consistent with Bishop's innocence, is that he bought the cow from Keel in 1873, and branded it and marked it in his brand and mark in the spring of 1874, after he conversed with Mrs. Hill, and understood her not to claim the cow; and that, upon suspecting that he had not obtained a good title from Keel, he tried to buy the cow from Mrs. Lizzie Hill in 1874.

A circumstance that tends to involve the whole matter in some uncertainty about the cow is that Wesley Beeman, an important witness for the prosecution, saw the cow before and after it was branded with Bishop's brand, and thought it was in the "highnote" mark which he had purchased; and stated that Bishop told him that he was mistaken; that he, Bishop, had bought the cow from Mrs. Hill. It is suggested by defendant's counsel that Beeman may have misunderstood Bishop on account of the similarity in the sound of the names Hill and Keel.

The charge of the court did not instruct the jury upon the nature of the offense, further than to tell them that the defendant was charged "with the theft of a certain cow,

the property of Mrs. Lizzie Hill, in the county of Navarro, on the 7th day of August, 1874." This is in charge No. 1.

The balance of the charge was, for the most part, instructions to the jury to aid them in construing, sifting, and weighing the testimony before them. There was, however, no objection to the charge taken by the defendant besides that taken in a bill of exceptions at the time of the trial, which reads as follows:

" Be it remembered that at the time of the charging of the jury by the court on the trial of said case as aforesaid, and before the case was submitted to the jury, the court charged the jury as set out in charge No. 2, to which charge of the court defendant, by counsel, excepted, on the ground that it was calculated to mislead the jury as to their powers as jury to believe or disbelieve testimony without any rules of law."

Charge two reads as follows:

" 2d. You have been impaneled and duly sworn to try the defendant under this charge. The jury are the exclusive judges of the evidence, and will give such credit to the testimony of each witness who has testified before you as you may think the same is entitled to receive at your hands. In civil cases the jury are required to find their verdict according to the greatest weight or preponderance of testimony. All evidence given before them is taken as true until the same is impeached by positive testimony or circumstantial evidence. In criminal cases the rule is different. The jury must discard from their consideration any part or the whole of the testimony of any witness that they may regard as improbable or untrue, and find their verdict on such evidence as they may regard as true and worthy of credit. You will apply this principle and rule of evidence to this case now submitted to you for your verdict."

This charge in effect instructs the jury, by way of illustrating their duty in weighing the evidence in the determ-

ination of this case, that in a civil case the jury must believe all evidence given before them until the same is impeached, and in a criminal case they must discard from their consideration any part or the whole of the testimony that they may regard as improbable. This is not correct as a legal proposition, and it is objectionable as an argumentative charge upon the weight of evidence. As to the first part of the proposition, it is not correct, because in law there is no difference between civil and criminal cases as to the right of the jury freely to weigh the evidence and find, according to their convictions, of its truth or falsity, except in the few cases wherein the law has prescribed artificial rules as to the character of proof or the number of witnesses. As to the last part of the proposition, it is not correct, because many improbable things actually do occur, and when detailed in evidence as part of any matter under investigation they are not to be discarded from the consideration of the jury because they are improbable. The improbability of the statement of a witness may diminish his credibility, but there is no rule of law prescribing that all improbable statements of a witness must be discarded from the consideration of the jury in arriving at the truth of the matter because they are improbable. It was a charge upon the weight of evidence because it in effect enjoined it upon the jury to leave out of view any statement of a witness that they might regard as improbable, and to proceed in arriving at their conclusion exclusively upon such as were in themselves probable; or, in other words, that the law excludes improbable statements as worthless.

It is to be particularly noticed that the record shows, and properly by a bill of exceptions shows, in this case, that this charge was excepted to by the defendant's counsel at the time of the trial and before the case had been submitted to the jury, and before they had retired to consider of their verdict; and that thus an opportunity was given

to the judge to correct or withdraw the charge if he had deemed it to have been improper, upon a reconsideration of it then made, before the final submission of the case to the jury.    This, in reference to the provisions of our Code of Criminal Procedure, will be found to be an important consideration in this case on appeal to this court, by the exception having been made, and shown by the bill of exceptions to have been made at the time of the trial, and to be much more beneficial to the defendant than if then not made, but made only afterwards on a motion for a new trial:

By article 3067, Paschal's Digest, it is provided that "whenever it appears by the record in any criminal action taken to the Supreme Court upon appeal by the defendant, that the instructions given to the jury were verbal, (except where so given by consent in a case of misdemeanor,) or that the district judge has departed from any of the requirements of the eight preceding articles, the judgment shall be reversed, provided it appears by the record that the defendant excepted to the order or action of the court at the time of the trial."    The two first of the eight articles referred to read as follows :

" Art. 3059. After the argument of any criminal cause has been concluded the judge shall deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case, but he shall not express any opinion as to the weight of evidence nor shall he sum up the testimony.    This charge shall be given in all cases of felony, whether asked or not.

"Art. 3060. It is beyond the province of a judge sitting in criminal causes to discuss the facts or use any argument in his charge calculated to rouse the sympathy or excite the passions of a jury.    It is his duty to state plainly the law of the case."

Thus a substantial infraction of this rule prohibiting a charge upon the weight of evidence is expressly made a ground for reversing a judgment when, by a bill of excep-

tions in the record, it is shown to have been excepted to at the time of the trial.   It is to be observed that this charge is not an irrelevant abstraction, as is sometimes the case, which this court may entirely disregard as not in any way pertinent to the facts of the case, for Bishop's defense depended  mainly on  the statements of his mother and of Adams, and this charge gave the jury the liberty, and indeed required them, to entirely disregard them at once, though the witnesses had not been impeached, if they regarded  them as improbable—not improbable and untrue, but improbable or untrue, between which  there is practically a wide difference.   If such a charge is not excepted to at the time of trial but presented in a motion for a new trial, which is the next point at which it could be presented, then its consideration by this court would be subject to another and a very different rule, which would be whether or not such charge was an error which, under all the circumstances, as exhibited in the record, was " calculated to injure the rights of the defendant," and which is prescribed as one of the grounds for the granting of a motion for a new trial in the following language : " Where the court has misdirected the jury as to the law, or has committed any other material error calculated to injure the rights of the defendant." (Paschal's Dig., art. 3137 ; Monroe *v.* The State, 23 Tex., 221 and 231; Robinson *v.* The State, 24 Tex., 154; Cockrum *v.* The State, 24 Tex., 398–399; Seal *v.* The State, 28 Tex., 495–496.)   This difference in the rule, dependent upon the time when the objection to the action of the court is made, is in harmony with the rules of judicial proceedings generally, that a party who makes an objection at the proper time, which is usually the first practical opportunity, shall have his objection more favorably considered than if it had been inopportunely delayed.

The records of this court abound with charges of a similar character, not so extreme generally as this, indicating an anxious effort to help the jury to come to a proper con-

clusion, very often shaped so as to give a hypothetical opinion upon the weight of the evidence, doubtless without intending it. They have seldom been adjudged to be good grounds for the reversal of the judgment, because they have been seldom excepted to at the time of the trial, as shown by a bill of exceptions, as in this case. And when not so excepted, but made the ground of a motion for a new trial, they have most usually been found to be not calculated to injure the rights of the defendant, however unnecessary they may be in view of the law, which is commonly charged in connection with them, that "the jury are the exclusive judges of the facts in every criminal cause." (Paschal's Dig., art. 3058; Scott *v*. The State, 25 Tex. Supp., 173–174; Ross *v*. The State, 29 Tex., 500; Robinson *v*. The State, 24 Tex., 154; Johnson *v*. The State, 27 Tex., 766.)

Being made the exclusive judges of the facts, the jurors, in contemplation of the law, are deemed to have the capacity to exercise those processes of thought and powers of combination which are sufficient to understand, without the aid of the judge, their relations and relative importance in arriving at a conclusion.

This subject is fully discussed and elucidated in the opinion of the court in the case of Brown *v*. The State, 23 Tex., 200, wherein the action of the court below is sustained in refusing to give charges of this character, shaped so as to be favorable to the defendant, to which reference may be had without repeating here what was then said.

The defendant in the present case having made the objection to this charge at the time of the trial, as shown by the bill of exceptions, is entitled to the full benefit expressly given to him by the law, which is, (the charge being substantially and clearly upon the weight of evidence,) that the judgment against him shall be reversed. (Marshall *v*. The State, 40 Tex., 202.)

It is proper to notice another error apparent upon the

record in order to prevent any misconstruction of the rules that have been announced, in connection with the rule by which this court is governed in its action, where there is a failure on the part of the court below to charge "the law applicable to the case," as required by the code, (Paschal's Dig., art. 3059,) and where it has neither been excepted to at the time of the trial, nor attempted to be remedied by asking a charge which was refused, nor made a ground for a new trial, all which are expressly permitted to be done by the code. (Paschal's Dig., arts. 3061, 3067, 3068, and 3137.)

By reference to the facts recited it will be seen that the real issue presented was raised by the evidence tending to show that Bishop appropriated the animal in good faith, believing he had a right to do so under his purchase from Keel. If that evidence was sufficiently strong to produce a reasonable doubt upon the minds of the jury as to the fraudulent taking of the animal by Bishop he should have been acquitted. The charge of the court as given did not explain to the jury what is meant in law by a fraudulent taking, necessary to constitute theft, either by a direct explanation or negatively, as is most usual, by explaining to the jury that the evidence of fraudulent taking might be rebutted by proof of good faith in the appropriation of the animal by Bishop, and that if the whole evidence taken together left a reasonable doubt of the fraudulent intent he should be acquitted.

The evidence tending to establish such a defense in this case required such a charge to be given, in some shape or other, under the article of the code which requires that "the judge shall deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case;" and being entirely omitted when so made necessary by the evidence adduced on the trial, its omission appearing of record on appeal, must be held to be a good ground of error by this court, although the charge in this respect

was not excepted to at the time of the trial nor objected to in the motion for a new trial.

This results from the general powers of revision and correction of errors given to the Supreme Court by the Constitution and laws of this State, in acting under the laws regulating proceedings in criminal trials. Our Constitution provides (in section 3, article 5, as amended) that " the Supreme Court shall have appellate jurisdiction only, which in civil cases and criminal cases shall be co-extensive with the limits of the State." This right of appeal in criminal cases, in some shape or other, was given in the Constitution of 1836, and in all the subsequent Constitutions. The remedy by writ of error, conferred by the statute of 1841, has never been applied to criminal cases. The appeal was given before the adoption of the common law, and while the Spanish civil law prevailed as our fundamental system, except in reference to criminal cases, which exception was made in the Constitution of 1836, by prescribing that " in all criminal cases the common law shall be the rule of decision." (Paschal's Dig., p. 34, sec. 13, art. 4.)

The language of the Constitution of 1836 giving this power was, that " The Supreme Court shall have appellate jurisdiction only, which shall be conclusive within the limits of the Republic." (Paschal's Dig., p. 33, sec. 8, art. 4.) Although a statute was passed applying this provision to criminal cases as well as to civil, still the Supreme Court of the Republic held that it inherently conferred the right of appeal in criminal cases, irrespective of any aid by the statute, and treated it as a remedy to revise the whole case upon the law and facts, as exhibited in the record, in criminal equally as in civil cases. (The Republic *v.* Smith, Dallam, 407.)

The same court, in another case, say: " The idea imported by the term *appellate jurisdiction* is clearly expressed, by a learned American jurist, 'An appeal is a process of civil law origin, and removes a cause entirely, subjecting

the fact as well as the law to a review and retrial.'" (3
Story's Com. Eq., 627; Bailey v. Haddy, Dallam, 378.)

Substantially the same language is used by the Supreme
Court of the United States in drawing the line of distinc-
tion between remedies of appeal and of a writ of error.
(United States v. Goodwin, 7 Cr. U. S. Rep., 110; see also
3 Dallam, 321.)

In harmony with and in pursuance of this construction
of the import thus given to the terms appellate jurisdiction,
all of our subsequent constitutions have expressly given to
the Supreme Court jurisdiction of criminal as well as civil
cases as an appellate tribunal, and statutes have been passed
providing the means by which the court should be enabled
to exercise its full power of revising a criminal cause upon
the laws and facts as presented in the record. Our present
statutes in relation to criminal procedure do not expressly
declare that a case shall be tried upon the charges of the
court, bills of exception, statement of facts, &c., as is
done in reference to civil causes, (Paschal's Dig., art.
1581,) but they do provide for the making of a state-
ment of facts, bills of exceptions to the action and rul-
ing of the court, for the charge of the court, and charges
asked, either given or refused, all of which are required
to be filed and made a part of the record, and to be sent
up by the clerk with the proceedings constituting the
record proper, in the transcript of the record, for the
action of the Supreme Court on the appeal. There is no
express limitation upon the general powers of revision of
this court, as to its action upon any one of those pro-
ceedings, which are thus properly made a part of the
record on appeal, except what may follow from the direc-
tions given as to the orders and judgments to be rendered
upon particular contingencies.

The general scope of its power is indicated, if not pur-
posely expressed, in the following articles:

"Article 3210 (744.) The Supreme Court may revise

the judgment in a criminal action, as well upon the law as upon the facts; but when a cause is reversed for the reason that the verdict is contrary to the weight of evidence, the same shall in all cases be remanded for a new trial."

"Article 3208 (742.)    The judgment in a criminal action upon appeal may be wholly reversed and dismissed when brought up by the defendant, or affirmed and dismissed when brought up by the State; the judgment may be reformed and corrected, or the cause may be remanded for further proceedings in the District Court, as the law and the nature of the case may require."   (Paschal's Dig., p. 341.)

To revise the judgment is to re-examine it, to look over it again carefully for correction, and the very use of the word *revise* is a legislative construction of the general powers of this court, in the exercise of its appellate jurisdiction, upon any part of the proceedings legally and properly made a part of the record on appeal, whether it be matter of law or of fact.   The fact that a defendant may except to a charge, when given, by pointing it out definitely, specifying his objections, and that he may so object to any part of the charge on a motion for a new trial, to both of which the law has attached certain consequences, does not, by any fair implication, debar him from making the same objections for the first time in this court that might then have been made; and there certainly is no express prohibition of its being done.   The duty of the district judge is none the less imperative to deliver a charge "in which he shall distinctly set forth the law applicable to the case" under article 3059, when not excepted to at the time of the trial in a felony case, although its infraction may invoke a different rule in revising the case on appeal, than that prescribed in article 3067, when it is excepted to at the time of the trial.

In this court, on appeal, as well as in the District Court, on a motion for a new trial, a material misdirection of the

law as applicable to the case, calculated to mislead the jury, would be error, justifying and requiring a reversal; and a failure to give in charge to the jury the law which was required by the evidence in the case, and which failure was to the extent to be calculated to injure the rights of the defendant, would be a material error, justifying and requiring a reversal on appeal. (Paschal's Dig., art. 3137; see, also, the cases subsequenty cited; see, for recent cases, 40 Tex., 15, 43, 203, 527.)

When the evidence tends sufficiently to the establishment of a defense or mitigation of the offense charged as to reasonably require a charge as applicable, is a question of sound judgment, to be exercised by the district judge, in the first instance, and afterwards by the Supreme Court, on appeal. If its force is deemed to be very weak, trivial, light, and its application remote, the court is not required to give a charge upon it. If, on the other hand, it is so pertinent and forcible as that it might be reasonably supposed that the jury could be influenced by it in arriving at their verdict, the court should charge so as to furnish them with the appropriate rule of law upon the subject.

It is laid down in one case as a general deduction from our cases that "it is only necessary to give such instructions as are applicable to every legitimate deduction which the jury may draw from the facts." (Johnson *v.* The State, 27 Tex., 766.)

On an appeal, the defendant would be subject to whatever presumptions might be indulged in favor of the correctness of the action of the District Court and the difficulties necessarily attending the effort to present the entire case upon the record, so as to get the benefit of a revision by this court of the case as it existed in the court below.

To apply the rule here indicated as applicable to this court in its act of revision, it is sufficient in this case to

say that there was evidence, in the testimony of Mrs. Bishop and of George Adams, which sufficiently tended to establish a defense to require the court to have instructed the jury as to the import of the terms fraudulent taking, or to have informed them what facts would rebut the presumption of a fraudulent taking of the animal, and that the omission of some such charge was a material error, calculated to injure the rights of the defendant, by leaving the jury to decide the law as well as the facts of the case.

That this is in accordance with the uniform decisions of this court, in the exercise of its powers as an appellate tribunal, may be seen by reference to the following cases, decided since the adoption of the criminal code, in addition to others before cited: Vaughan *v*. The State, 21 Tex., 752; Bell *v*. The State, 25 Tex., 574; Villareal *v*. The State, 26 Tex., 109; Maria *v*. The State, 28 Tex., 710.

In none of the cases just cited, some of which are leading cases, do the reports of them show, nor does it appear in the opinions therein delivered, that there was an objection made to the charge, for misdirection or deficiency, either in exceptions at the time of the trial or in the grounds of a motion for a new trial, nor is there the least intimation in them, or that has been found elsewhere in our reports, that it was necessary to raise such objections below, as to the misdirection or deficiency of a charge, as a prerequisite appearing on the record to enable this court to revise such action of the court in relation to the charge. This is regarded ample evidence of the construction of the powers of this court in appeals, and of the rules under which it has uniformly acted, as above stated, and as shown by reference to the cases cited.

On both grounds of error, in charging substantially on the weight of evidence excepted to at the time of the trial, and for the material deficiency in the charge, not objected to below, but apparent on the record, and deemed

to be an error calculated to injure the rights of the defendant, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.