## PETER BROWN *v.* THE STATE.

1. PRACTICE IN THIS COURT—BILL OF EXCEPTIONS.—This court will not revise the admission or the exclusion of evidence by the court below, unless a bill of exceptions was duly taken, and is brought up in the transcript.

2. INFANT WITNESS.—There is no precise age within which a child is held incompetent to testify. At the age of fourteen a person is presumed to be competent; under that age his competency is practically determined by an examination in respect to natural intelligence, his education, etc.

3. SAME.—Unless it be made clearly to appear that, in admitting the testimony of a child, the court below abused its legal discretion, to the prejudice of the accused, this court will not set aside the conviction on account of the admission of such a witness.

4. CHARGE OF THE COURT.—A child of seven years old being allowed to testify for the state, his testimony was in some respects contradicted by witnesses for the defense. The court below in effect instructed the jury that, if they could not reconcile the conflict of the testimony, they might "consider the age, intelligence, interest in the case, apparent prejudice, or other circumstances in evidence, in determining the credibility of the witnesses." *Held*, not objectionable as a charge on the weight of evidence.

5. CONSPIRACY—INDICTMENT.—The same degree of particularity is not required in charging an unexecuted conspiracy as in charging an executed one.

APPEAL from the District Court of Harrison. Tried below before the Hon. A. J. BOOTY.

The indictment charged Peter Brown, Sam Mason, Henry Helm, and Bob White with a conspiracy to commit burglary. The charging part of the indictment was as follows : That, "on the 19th day of June, A. D. one thousand eight hundred and seventy-six, the said Peter Brown, Sam Mason, Henry Helm, and Bob White, being persons of evil minds and dispositions, wickedly devising, and intending fraudulently, burglariously, and by force to break and enter, in the night-time, the store-house of E. H. Newlon and J. K. Williams, composing the commercial firm of E. H. Newlon & Co., situated in said Harrison county, with the intent to fraudulently take, steal, and carry away from, and out of, the possession of the said E. H. Newlon and J. K. Williams, and

without their consent, and with the intent to deprive the said
E. H. Newlon and J. K. Williams of the value of the same,
and to appropriate the same to the use of them, the said
Peter Brown, Sam Mason, Henry Helm, and Bob White,
certain goods and groceries, of the value of one hundred
dollars, the property of the said E. H. Newlon and J. K.
Williams, they, the said Peter Brown, Sam Mason, Henry
Helm, and Bob White, did, on the day and date aforesaid,
in the county aforesaid, fraudulently, maliciously, and
unlawfully conspire, combine, confederate, and positively
agree together, between and amongst themselves, by force,
and in the night-time, to burglariously enter the said store-
house of the said E. H. Newlon and J. K. Williams, then
and there situate as aforesaid, with the intent as aforesaid
to fraudulently take, steal, and carry away the goods and
groceries as aforesaid, of the value of one hundred dollars,
the property of the said E. H. Newlon and J. K. Williams,
without their consent, and with the intent to deprive the
said E. H. Newlon and J. K. Williams of the value of the
same, and to appropriate said goods and groceries to the use
of them, the said Peter Brown, Sam Mason, Henry Helm,
and Bob White, contrary," etc.

The present appellant, Peter Brown, obtained a sever-
ance, and was tried at the fall term, 1876, of the district
court of Harrison county.

Doc Saunders, a boy of seven years of age, was the first
witness for the state. The counsel for the accused objected
to his competency as a witness, and the court below put
him upon his *voir dire*, and held him to be competent to
testify. Counsel for the accused reserved exceptions to this
ruling. The substance of the bill of exceptions is stated
in the opinion of this court.

In the opinion will also be found such parts of the testi-
mony as appear to be material.

For the accused, his wife, and two witnesses who occu-

pied an adjoining room in the same house, testified very positively that the accused went to bed very early in the night on which the burglary was attempted, and remained there until morning.

The jury found the accused to be guilty, and assessed his punishment at two years in the penitentiary. The errors assigned are indicated in the opinion.

*McAdoo & Russell,* and *A. Pope,* for the appellant. It certainly must be shown, by credible testimony, that a conspiracy was agreed to, and it must also be shown by the same character of testimony that the appellant was one of the persons agreeing or consenting to it. The attempt to break is only a circumstance which remotely corroborates Saunders that an agreement had been previously entered into. If it proves anything at all, it, at best, only tends to establish the commission of the offense, or a suspicion or belief that an offense was committed. In addition to the corroboration necessary to establish that an offense had been committed, the statute requires " a corroboration by other evidence tending to connect the defendant with the commission of it." *Wright* v. *The State,* 43 Texas, 209.

In the case of Wright the court says " that no conviction can be obtained on the testimony of an accomplice alone, when his evidence is not corroborated by other testimony, showing that the accused was engaged in the transaction which forms the subject-matter of the charge under investigation." Saunders does not say that the appellant entered into the agreement, or was present when it was made, and assented to it; but that himself and two others agreed to it, and, when they reached the store, they found appellant and Mason there. For aught that appears from the evidence, the appellant may have accidentally met them there, and was a disinterested spectator of the whole affair. His bare presence is not sufficient to charge him with a guilty knowl-

edge of the intention of the others to commit an offense, or
that they had previously confederated, combined, and con-
spired to do it.    There is no proof that he was aware of a
conspiracy to commit burglary.    His presence was not suf-
ficient to inculpate him with an agreement or unlawful com-
bination to violate law and to do the specific thing charged
against him.    In *Burrell* v. *The State*, 18 Texas, 732, in an
opinion by Justice Wheeler, and in *Cruit* v. *The State*, 41
Texas, 479, this view of the law is sustained.

The witness Saunders is clearly an accomplice.    It does
not follow that, because a person is technically not amenable
to law for an infraction of it, he cannot be considered an
accomplice.    It is not essential that he should be liable to
punishment to condemn his testimony as that of an accom-
plice.    Nor is it essential that he should stand in fear of
punishment, to make him an accomplice.    If one's liability
to punishment, or the fear of it, alone made him an accom-
plice, how easily it would be to remove all responsibility
and accountability for crime by dismissing the prosecution
against him, as is done in many cases, and in all cases where
a party is under indictment and the state seeks to use the
testimony.    If there were no restrictions or qualifications
other than a liability to punishment to an accomplice's tes-
timony, and these restrictions being removed would make
him equally credible with any other witness, what, then, is
the object of Article 3118?    It's whole spirit, purpose,
and intent is to prevent, in any event, a conviction upon
the unsupported evidence of any one who is concerned in
the commission of the crime—any associate in the crime—
in short, any one who, being a participator in the offense,
confesses the turpitude of his conduct as connected with
the guilt of others.    In *Barrara* v. *The State*, 42 Texas,.
263, Justice Gould, in defining who are accomplices, says
" it embraces a person concerned in the commission of the
crime—any associate in the crime—whether principal or

not." See Bouv. Dict., tit. Accomplice ; Webster's Dict. The analogy in the two cases, as presented by their records, is so close, we feel warranted, in the discussion of this case, to have alluded to some of the incidents connected with the trial of the first of the alleged conspirators.

Appellant's counsel asked, and the court gave, this charge, viz. : "When the defendant relies on proof of an *alibi* at the time of the alleged offense, in order to authorize the jury to render a verdict of not guilty the evidence of such *alibi* is only required to be of such weight as to produce upon the minds of the jury a reasonable doubt of the fact affirmed by the state, that Brown was present, and was one of the parties engaged in the commission of the offense charged in the indictment." This court has decided this to be the law in the Walker and Black cases. Yet the jury absolutely ignored it in making their verdict, and the honorable judge presiding, too implicitly believing in the theory that a jury are the exclusive judges of the sufficiency of the testimony, refused a new trial, committing, as we think, an error often reproved by this court. District judges should, in felony cases, exercise a liberal discretion in granting new trials. The rules of this court are founded upon the assumption that the district court has acted, and will act, upon such liberal discretion. In civil cases the true test is, " Is the evidence reasonably sufficient to satisfy the mind of the truth of the allegations ?" *Chandler* v. *Meckling*, 22 Texas, 42. If this is demanded in civil, surely it is in criminal, cases, where the " presumption of innocence " alone rebuts a *prima facie* case.

The court erred in its charge to the jury, and more particularly when it gave it full discretionary power to receive or reject the evidence of any or all of the witnesses. This portion of the general charge was especially calculated to mislead the jury, as it bore directly upon the weight of the evidence. It may be urged that this objection comes too

late, but surely a failure to make it at the time the charge was given will not impair the rights of the appellant, or affect the remedy embraced in the revisionary powers of this court. The objection to it was reached in his motion for a new trial. The court is respectfully referred to the opinion of Judge Roberts in the case of *Bishop* v. *The State*, 43 Texas, 390, wherein this question is dicussed and determined substantially in accordance with the views herein.

We are of the opinion that the indictment is insufficient, and that the court should have arrested the judgment. It does not charge the accused with having "feloniously" conspired and agreed to commit the offense of burglary, nor with having a felonious intent to steal the goods, etc., and wholly deprive the owners of them. The word "feloniously" is essential to all indictments for felony where a particular intent is a material fact in the description of the offense. It does not charge an "intent to commit a felony," but it attempts, in a suppositional way, to describe an offense which, by inference or intendment, is a felony. It does not set forth the offense with that particularity demanded by the statute. The evidence in this case, if true, only shows an *attempt* to commit burglary, but does not disclose such an agreement as would constitute the offense of conspiracy.

*George McCormick*, Assistant Attorney General, for the State. The witness Saunders cannot be considered an accomplice. He was below the age of legal accountability, and incapable of committing a crime. Pasc. Dig., Art. 1638.

Here was a child, seven years of age, taken from his bed at midnight by these men, for the purpose of using him to get stolen property from the house they designed to break. They wanted him only because of his small size, that they might put him into the house, through the transom over the

door, to hand to them the stolen property, they remaining on the outside. This child, acting under their influence and coercion, cannot, either in law or common sense, be said to have been an accomplice.

This was an offense requiring a previous contract and positive agreement between the parties who designed to engage in it. This boy of seven years could never have made such a positive agreement. He lacked the judgment, the discretion, the aforethought, necessary to supply his want of age. He was as clay in the hands of these potters; they molded him, they shaped and fashioned him as they saw fit. He is guiltless; they should be made to suffer the just penalty of the law. His evidence cannot legally be subjected to the rule governing the testimony of accomplices.

Winkler, J. The appellant seeks a reversal of the judgment rendered against him in the district court on the following grounds, to wit:

1st. The court erred in its ruling upon the evidence.

2d. The court erred in allowing the witness Doc Saunders to testify, over objections raised by the defendant, Brown.

3d. The court erred in its charge to the jury.

4th. The court erred in overruling defendant's (Brown's) motion for a new trial.

5th. The court erred in overruling the motion in arrest of judgment.

Treating these several alleged errors in their order, it is a sufficient response to the 1st of them to say that we find no bill of exceptions to any ruling of the court except the one mentioned in the 2d error; and, without this, the established rule is not to revise, on appeal, the action of the court below as to its rulings in either admitting or excluding evidence.

As to the 2d error assigned, the defendant having

taken a bill of exceptions to the ruling of the court in admit-ting the witness Doc Saunders to testify, over the objections of the defendant at the time, it becomes necessary that the question be considered.

It is shown by the bill of exceptions that this witness, on being examined, said he was only seven years of age, and stated in effect that, if he should swear falsely, the bad man, by which he meant the devil, would get him, and that he would be sent to Huntsville, and that when he spoke of Huntsville he meant the penitentiary.

The law as to the admissibility of evidence of children is correctly stated in Greenleaf on Evidence (vol. 1, sec. 367), as follows: "But, with respect to children, there is no precise age within which they are absolutely excluded on the presumption that they have not sufficient understanding. At the age of fourteen every person is presumed to have common discretion and understanding, until the contrary appears; but under that age it is not so presumed, and, therefore, inquiry is made as to the degree of understanding which the child offered as a witness may possess; and, if he appears to have sufficient natural intelligence, and to have been so instructed as to comprehend the nature and effect of an oath, he is admitted to testify, whatever his age may be."

The practice is for the court to examine the youthful witness as to his natural intelligence and the extent to which he has been instructed or educated, and, according to the developments made on this examination, to admit or exclude the evidence. See notes to the section of Greenleaf above referred to.

Our attention has been called to but one case in our own supreme court reports—the case of *Davidson* v. *The State*, 39 Texas, 129—where it was said in effect that the admission of a child's evidence is properly in the sound discretion of the court; and the case was affirmed on the ground, so far as this question affected the decision, that the judge

before whom the case was tried believed the witness competent.

We believe that the court before whom the examination of a child offered as a witness is made is better able to determine as to its competency to testify than this court could possibly be from the bare transcript ; and we would not feel warranted in reversing a conviction had on account of the admission of such testimony, unless it was made clearly to appear that the discretion of the court had been abused.

In this case it has not been shown that the discretion given by the law has been abused by the admission of the testimony of the witness Doc Saunders. When the evidence of this witness is considered in connection with the charge of the court, it is not perceived that any injury could have resulted therefrom to the accused.

This brings us to a consideration of the 3d assignment of errors, to wit : " That the court erred in its charge to the jury." In order to a clear understanding of that portion of the charge which relates to the testimony of the witness Doc Saunders, it is proper to notice that, on his examination as a witness, he states in substance that he heard two of the alleged conspirators, Bob White and Helm, say they intended to break into the store-house of the persons named in the indictment as the owners, and that they wanted witness to go with them ; that he agreed to do so. He says, " I told them I would. They said they wanted to take out the glass over the door [meaning the transom-lights], and put me through to get grub for them. I agreed to do it. Me and Bob White and Helm, * * * late in the night, after midnight, went up to the store and found Sam Mason and Peter Brown there ;" and he goes on to speak of how the parties disposed themselves, some to work in removing the glass, and the others to watch, and mentions that he " sat down in the door of Lake's drug store, which adjoins, and faces with, the store " intended to be entered.

Fraley, a city policeman, speaking of the affair, says : " I caught, while he was squatting down in the door-space of the drug store of Lake, the boy, Doc Saunders." This appears to have been done after the others had taken an alarm and fled. Fraley also saw and recognized one of the parties, the man Mason, and saw two men, at the place designated by the boy, working at the transom, and one standing at the place named by the boy as the point where Brown stood, though he only recognized Mason. Other testimony corroborated the statements of the boy, Saunders.

The court charged the jury, among other things, as follows—evidently on the idea that Saunders was an accomplice : " You are further instructed that you cannot convict upon the testimony of the witness Doc Saunders, unless he is corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense." And the jury were elsewhere instructed : " You may consider the age, intelligence, interest in the case, or apparent prejudice, if any, and all other circumstances in evidence before you, in determining the credibility of the witness." From all these instructions it is not seen how any injury could have resulted from the admission of the testimony of the boy, Doc Saunders

In all other respects the charge, taken as a whole, seems to be a full and clear statement of the law applicable to the facts of the case as made by the evidence, and as favorably as the defendant was entitled to have it. A proper charge was given as to reasonable doubt and the legal presumption of innocence, and on the subject of an *alibi* the court charged as asked by the defendant's counsel, and very favorably for the accused. We find no error in the charge of the court of which the accused can complain.

The 4th error assigned is to the overruling of the defendant's motion for a new trial.

There are two motions for new trial set out in the tran-

script.   The grounds relate to the charge, and to the law
and evidence of the case, and the sufficiency of the evidence
to support a conviction.   One portion of the charge, not
before noticed, is specially objected to in the motion for a
new trial, namely, that the court erred " in that part of the
general charge of the court which instructs the jury as to
their discretionary power to receive or reject the evidence
of any or all of the witnesses."

Agreeable to our understanding of the record, it does
not fully sustain the objection taken to it.   The charge is
as follows :   " It will be the duty of the jury to so reconcile
any conflict you may find in the testimony as to give credit
to the whole of the testimony, if you can ; but, if you should
be unable to do so, then you will credit the whole or
any part, or discredit the whole or any part, of the testi-
mony of any witness who has testified in the case, accord-
ing as said testimony itself, or the manner of the witness in
detailing the same, may impress your minds as being worthy
or unworthy of belief ; and you may consider the age, intel-
ligence, interest in the case, or apparent prejudice, if any,
and all other circumstances in evidence before you, in
determining the credibility of the witnesses."

This charge was evidently intended to give the jury some
guide which would enable them to determine who was most
entitled to be believed, in the event they should find such
conflict in the statements of different witnesses as that it was
not possible for them to reconcile all the statements of all
the witnesses, with the idea that they had all spoken truth-
fully—not as a direction as to who or what set of witnesses
should be believed to the exclusion of others, but leaving it
still to the jury to determine the credibility of the wit-
nesses, and to give them some information as to what they
might legally take into consideration in determining the
matter, should the contemplated emergency arise in their
minds in deciding upon the evidence.   It does not express

any opinion as to the weight of evidence, but leaves it to the jury exclusively to judge of the facts, as required by the Code of Criminal Procedure, Article 593. Pasc. Dig., Art. 3058.

In *Rideus* v. *The State*, 41 Texas, 199, the court found no error in a charge similar to the one under consideration. The case of Rideus is quite different from *Bishop* v. *The State*, 43 Texas, 390; there the charge attempted to draw a distinction between civil and criminal causes, and was in this and other respects criticised by the supreme court. But the charge as set out differed from the charge in the present case, and that in Rideus' case, as must be apparent on examination of the several cases. We do not question the correctness of the rulings of the supreme court in either Rideus' or Bishop's case.

As to the other grounds set out in the motion, we think there is evidence sufficient to support the verdict. There is some conflict in the evidence, but with this it was the business of the jury to deal. We would not feel warranted to disturb the verdict on this ground.

There remains to be considered the 5th assignment of errors, which involves the overruling of the motion in arrest of judgment. The only ground set out in the motion is that the indictment charges no offense against the laws of this state. The offense of which the accused was charged is clearly defined and set out in the amendment to title 21, chapter 1, of the Penal Code, passed October 26, 1871. Pasc. Dig., Art. 6575 *et seq*. The indictment is sufficient to charge a conspiracy to commit the crime of burglary as defined in the Code. The punishment for this offense is prescribed in the act (Pasc. Dig., Art. 6581), and the lowest penalty, the *minimun* fixed by law for the offense, has been imposed on the accused by the jury—viz., two years' confinement in the penitentiary.

Bearing in mind the difference between charging an exe-

-cuted and an unexecuted conspiracy, as recognized by the writers on criminal jurisprudence, and the fact that the same particularity is not expedient or requisite in setting -out the facts constituting an unexecuted conspiracy as when the act has been consummated, we are of opinion that the indictment in this case sets out a conspiracy to commit burglary, with all the particularity required by the Code. Whart. Cr. Law, sec. 2337.

The conspirators are charged with an agreement to break, in the night-time, into a certain described store-house, with a fraudulent intent to take, steal, and carry away from the possession of the owners, without their consent, goods and groceries to the value of $100, and to appropriate the same to the conspirators' own use, and to deprive the owners of the value thereof. And, agreeably to the evidence, they were surprised in the attempt to carry out the object of the conspiracy.

The judgment is affirmed.

*Affirmed.*