BARNEY TULLER v. THE STATE.

1. ARSON of a dwelling-house is in the nature of an offence against the security of the habitation rather than against the right of property; and the tenure or interest of the occupant is immaterial if the tenement is in fact his domicile.

2. EVIDENCE.—In a trial for the wilful burning of a dwelling-house alleged to belong to one R., the State introduced in evidence the absolute conveyance of the premises from the defendant's mother to R., and proved that R. was occupying the house as his dwelling-house when it was burned by defendant. The defence proposed to prove that R., having failed to pay the defendant's mother for the premises, had verbally agreed to surrender them to her; and that it was by her authority the house was fired. *Held*, that the evidence adduced by the State sustained the allegation of owner-ship, whether R. had paid for the premises or not; and that the proof proposed by the defence was properly excluded.

3. INDICTMENTS FOR ARSON, in this State, need not charge that the burning was felonious and malicious, as was required at common law. It is suffi-cient to allege and prove that it was "wilful," and the particular intent with which it was done is not material.

4. PRINCIPALS.—An indictment charging the accused as a principal offender need not aver the particular acts or facts which inculpate him as a prin-cipal rather than as an accessory.

5. ARSON BY OWNERS.—The Penal Code makes it arson for the owner of a house to burn it wilfully, under certain circumstances, among which is "when there is within it any property belonging to another." An indict-ment based on this provision must allege the ownership in the accused, and aver the fact relied on to incriminate him; and the evidence must cor-respond with the allegations. In a trial for the wilful burning of the house of another, this provision is not law applicable to the case, and should not be given in charge to the jury.

6. CHARGE OF THE COURT—PRACTICE.—If no exception to an erroneous instruction was taken in the court below, and it was primarily complained of in the motion for a new trial, it is not, in general, cause for reversal on appeal, unless it appears to have been calculated to injure the rights of the appellant. Otherwise, if exception to it had been duly taken.

7. SAME.—When a defendant requested an erroneous instruction, which was

refused because already given in the charge of the court, he is not in an attitude to complain of it on appeal.

8. PARTIES who take the law into their own hands must abide the consequences.

APPEAL from the District Court of Chambers.    Tried below before the Hon. E. HOBBY.

The indictment charged that the appellant, "in said county of Chambers, did, on or about the eleventh day of February, 1880, wilfully burn two certain houses, the property of Emeri Reaume, against the peace and dignity of the State." The jury found a verdict of guilty, and assessed as the punishment a term of five years in the penitentiary.

E. Reaume, for the State, testified that on the day alleged in the indictment, the defendant, Barney Tuller, and three of his brothers, with one Irons, came to witness's place in Chambers County. When they first came, witness was not at home, but his wife and two children were. As witness, while returning home, got within a hundred yards or so of his house, he was halted by the defendant and a companion, who drew their guns on witness and said they would kill him unless he stopped. Witness got to within fifty yards of his house and stopped, and the defendant and his companion told him that if he did not go and get his children from under the house, they (defendant and his party) would burn it down on them. The party had taken out some of witness's things before he got home, and this had scared the children to taking refuge under the house. After witness got the children from under the house, the party told him to take the remainder of his things out of the house or they would burn them. Witness got everything out except a safe, some leather, and some clothing, which he forgot. The defendant and one of his brothers then told a younger one to go and set fire to the house. The boy would not do it until they told him several times, saying that they would be responsible. Then the boy set

fire to witness's dwelling, which, as well as another house which witness had built on the premises, was burned up, without his consent and against his protest. Witness, his wife, and their two little children were the only persons present besides the defendant and his companions. Witness owned the place, having bought and got a deed for it from Mrs. M. J. Tuller and Mrs. Lloyd, the mother and grandmother of the defendant. The defendant told witness that he burned the house because witness had ordered him out of it a month or two previous, on account of his saucy talk to witness.

On his cross-examination, the witness said that the defendant and his party would have given him plenty of time to remove all his things from the house before it was burned ; but he was excited, and forgot the articles which were left in it and consumed. Witness was to have paid $400 for the place, and had paid $50 in part of the amount. Witness denied having signed a certain note or obligation for $400, exhibited to him by the defence ; but on his re-examination explained that the signature under the note was his, but that the note had been written over it without his authority, — a statement which was contradicted by the person who wrote the deed and note, and who testified for the defence.

The State introduced in evidence an absolute deed to Reaume for the tract of land on which the houses were situated. It bore date January 16, 1878, was made by Mrs. Lloyd and Mrs. Tuller, and conveyed three hundred and seventeen acres by metes and bounds, "in consideration of four hundred dollars to us in hand paid by Emeri Reaume."

The testimony admitted for the defence was to the effect that Reaume did place his signature to the note. That instrument was introduced. Bearing date January 16, 1878, it purported to obligate Reaume to pay to Mrs. Lloyd and Mrs. Tuller the sum of $400, "beginning now and finishing the payment within two years from date." Mrs. Tuller, testifying for the defence, stated that Reaume made some

payments on the note, but she did not designate the amounts.

The defence offered testimony to prove that the defendant's mother, Mrs. Tuller, had authorized him to burn the houses, and that it was agreed that the premises should be surrendered by Reaume in case he failed to pay for them within two years after his purchase. On objections by the State, this testimony was excluded, and the defence reserved exceptions.

*W. B. Denson*, for the appellant.

*Thomas Ball*, Assistant Attorney-General; for the State.

CLARK, J.   Arson has ever been regarded as an offence against the security of the habitation rather than the property, and the actual title and true ownership can rarely be a matter for material inquiry in prosecutions for that offence.   The landlord himself may commit it on the house occupied by or in possession of the tenant, for during the lease the house is the property of the tenant; and so the true owner may be held liable for the offence, although the contract of purchase be simply executory, and for default he may reënter and repossess the premises by action for title and possession.   The court will not inquire into the tenure or interest of the occupier or person in possession of the house, if in fact it is the dwelling of such person. *The People* v. *Van Blarcum*, 2 Johns. 105; *The People* v. *Gates*, 15 Wend. 159; *The State* v. *Lyon*, 12 Conn. 487; 4 Bla. Comm. 221; 2 East's P. C. 1022, 1027; 2 Russ. on Cr. 551; 2 Bishop's Cr. Law, sect. 39.

Whether the title and ownership of the houses destroyed were in Reaume, the alleged owner, or in Mrs. Tuller and Mrs. Lloyd, the mother and grandmother of the appellant, was wholly immaterial, in view of the conclusive and uncontradicted testimony as to the former's possession and occupancy.   For the purposes of the trial below, the houses were his, and were protected by law from ruthless invasion

and destruction at the hands of any other person; and the court acted properly in excluding from the jury the directions, if any, that may have been given by Mrs. Tuller to appellant concerning the property, and all other evidence offered relating to the contract between the parties, at the time of purchase or subsequent thereto. If Emeri Reaume had in fact renounced the contract verbally, which, in view of the whole evidence, is most improbable, yet such renunciation had not in fact been executed by delivery of possession nor abandonment of the premises; and until this had been done, the right of destruction did not enure to the vendors, or their agent acting under their direction.

While it is not necessary for a decision of the case that further notice should be taken of the effect and operation of the deed of conveyance from Mrs. Lloyd and Mrs. Tuller to Emeri Reaume, yet for the benefit of counsel for appellant, who have contended so strenuously in support of a different view, we have to say that in our opinion the legal title to the land described therein was fully vested in the vendee by the terms of the conveyance. Had the vendee's lien been retained in the face of the deed, or, contemporaneously with its execution, had the vendee executed a mortgage back to the vendors to secure the purchase-money, the propositions contended for in briefs of counsel would have been abstractly correct. *Peters* v. *Clements*, 46 Texas, 114, and authorities cited. But in this instance no such steps were taken, and the deed recites on its face the payment of the purchase-money in full, with covenant of general warranty, under which state of facts a different rule obtains.

The indictment follows the statute, and is deemed sufficient under our law. At common law, arson is defined to be the malicious and wilful burning the house of another, and an indictment under that system was required to aver that the burning was not only felonious, but also malicious and wilful. To constitute arson under our statute, the burning

need only be wilful, and the indictment need only employ that term. Penal Code, art. 651; Code Cr. Proc. 428; *Thomas* v. *The State*, 41 Texas, 27. A particular intent is not a material fact in the description of the offence, and need not therefore be stated. Code Cr. Proc., art. 423. And it is only requisite that it be established in evidence that the burning was wilful and with design, which is abundantly shown in the record before us.

It has been repeatedly held that it is not necessary to allege in the indictment the particular facts which may bring the defendant within the law as a principal, although the offence with which he is charged may not have been actually committed by him. If he is a principal offender by reason of the part performed by him in the commission of the offence, he may be convicted under an indictment charging him directly with its commission. *Williams* v. *The State*, 42 Texas, 392.

The indictment in this case alleged that the houses destroyed were the property of Emeri Reaume, and this allegation is abundantly established, for all the purposes of this prosecution, in the evidence both for the State and the defendant. Indeed, the evidence on both sides established most conclusively the possession and occupancy of Reaume, which, as we have seen, constitutes the only ownership necessary to be inquired into in the case. Apart from this, the conveyance from Mrs. Lloyd and Mrs. Tuller vested, by effect and operation, full legal title in Reaume, the alleged owner. In the progress of the trial, evidence was adduced, without apparent objection, that certain articles of personal property belonging to Reaume, in the confusion naturally incident to such an occurrence, were left in the houses and were destroyed in the burning. The court, after a full and accurate instruction as to the effect of the conveyance or contract between the parties, and the possession and occupancy of the premises by Reaume, concluded the charge with an instruction substantially to the effect that if the jury

believed that the houses were the property of Mrs. Lloyd and Mrs. Tuller, and that they authorized defendant to burn the houses, and that at the time the burning was effected there was property in either of the houses belonging to another person, they should convict. This charge was not excepted to, and this portion is first complained of as error in the motion for new trial.

Our statutes provide that the owner of a house may commit arson by burning it, under certain circumstances, among which is enumerated, when there is within it any property belonging to another. Penal Code, arts. 658, 659. The "owner," as herein designated, may be properly regarded as, and better styled, the "occupant;" for, as we have already seen, there may be many other circumstances, not enumerated in the statute, under which the true owner would be liable to conviction for arson, in case he destroyed his own house by wilful burning. A conviction for burning his own house, or a house occupied by the defendant under a lease, or other contract vesting in him some legal interest, in contradistinction to a naked occupancy, cannot, however, be sustained under an indictment alleging the house to be the property of another. Under a general allegation of ownership, as in this case, the conviction must rest alone upon evidence which shows that the alleged owner was in occupation of the premises, or was in fact the owner, the premises being unoccupied. To charge an owner or occupant for arson under any of the exceptions contained in the statute subjecting him to liability, the indictment must be so framed as to bring the case within some exception, and correspond to the evidence proposed to be adduced upon the trial. A. cannot be convicted under an indictment charging him with burning the house of B., if upon trial it is developed in evidence that B. was neither the owner nor occupant of the premises, but that merely his personal property was in the house at the time of its destruction. The charge of the court was not applicable to the facts in the

particular complained of, and the error being presented for the first time in the motion for new trial, it remains to be inquired whether, in view of all the evidence and the whole case, it was of such a material character as to require a reversal of the judgment of conviction.

Our Code of Criminal Procedure provides that after the argument of any criminal cause has been concluded, the judge shall deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case. Code Cr. Proc., art. 677. It further provides that whenever there has been a failure to do this, and the error is excepted to at the time of trial, the judgment shall be reversed. Code Cr. Proc., art. 685. In case it is not excepted to, but is presented for the first time in a motion for new trial, then, as has been well said, " its consideration by this court would be subject to another and very different rule, which would be whether or not such charge was an error which, under all the circumstances as exhibited in the record, was 'calculated to injure the rights of the defendant,' and which is prescribed as one of the grounds for granting a new trial." *Bishop* v. *The State*, 43 Texas, 396. The principle so ably and thoroughly elucidated in the case just cited has been uniformly followed since, and constitutes an established principle in criminal procedure in this State.

Tested by this principle, in connection with all the circumstances in the record before us, our conclusion is that the particular portion of the charge complained of, though inapplicable to the case, could not have misled the jury or injured the rights of the defendant. The possession and occupancy of the premises by Reaume at the time of their destruction were not controverted, and, under the evidence, either for the State or the defence, the jury could not have found otherwise. For the purposes of this trial, such possession and occupancy constituted ownership under the law, and the only defence interposed, or attempted to be

interposed, was, not that the defendant and his confederates did not burn the house, but that he had a right to burn it. From the uncontradicted evidence upon these points the jury were bound to conclude, under the law as given them and under the law as it is, that Reaume was the owner of the house, as alleged; and under the facts, which were not controverted, that the defendant, with others, burnt the houses wilfully and with design. This fixed his guilt under the law, without the necessity of a resort to evidence, by no means so conclusive, upon which to base a conviction for burning the defendant's own house, with some other person's property therein. Under the law, the facts, and the charge of the court, it was impossible for the jury to have found the ownership in any other person than that alleged, and the error complained of was therefore harmless. Besides, the defendant requested an instruction to a similar effect, and ought not to be heard to complain if his request was substantially complied with.

The appellant has been fairly tried and convicted of an offence denounced by the law as one " of very great malignity ; " and though he may have acted under a mistake, yet if it was a mistake of fact, it evidently arose from a want of proper care, and is inexcusable in law. In an attempt to take the law into his own hands, he has involved himself in its meshes, and must suffer the penalty. The lesson is a severe one, but may be fraught with lasting good to himself and others, when it becomes thoroughly understood that in this State the law must prevail, and is ample to protect all rights of person and property, as well as to punish all infractions of its provisions.

The judgment is affirmed.

*Affirmed.*