[No. 1375.]

## THAD. THOMAS *v.* THE STATE.

CIRCUMSTANTIAL EVIDENCE—CHARGE OF THE COURT.—Where the inculpatory evidence is purely circumstantial it is the duty of the court to expound to the jury the nature and conclusiveness of such evidence, in order to warrant a conviction. It is a part of the law of the case, and its omission in such a case in the charge is fatal to a conviction.

APPEAL from the Criminal District Court of Harris. Tried below before the Hon. G. Cook.

The indictment was for the theft of money over twenty dollars, the property of Robert Leslie. The trial of the appellant resulted in his conviction, with a two years term in the penitentiary assessed against him as punishment.

R. H. Leslie testified, for the State, that he resided at Leslie Station, on the Texas Western Railway, in Waller county, Texas. On the seventeenth day of September, 1882, he had about ninety-seven dollars in United States currency and silver stolen from him, including one United States silver certificate bill of the denomination of twenty dollars, several ten dollar and five dollar bills, and about three dollars in silver, and a one and a two dollar bill. The witness, who was station agent, placed this money in a small tin box, which box he placed in a bureau drawer in his house, from where it was taken.

On the day of the theft, Tom Carson and the defendant came to the station together, and presently two other persons came, one of whom, James Brown, known to the witness, asked the witness to lend him four dollars. The witness took the tin box and gave him the money. The defendant then bought a ticket to Houston, after which the witness put the box back. The defendant saw him. The witness then closed the door and started to the station house, a short distance off, the four colored men going out of the gate ahead of the witness. Two colored men got on their horses and rode off, leaving Carson, the defendant, and witness together. They went on to the station house. After strolling around the station house awhile, the defendant asked the witness some questions which the witness did not under-

stand, and Carson, being asked what he said, replied: "He is asking your permission to go back to the well to get some more water." There was no other well than that in the witness's yard about the station. The witness gave his permission, and the defendant went to the house.

Shortly afterwards, in looking to see if the cars were in sight, the witness saw the defendant out near the gin house, with his hands together in front of him as if fingering something. Just then the defendant turned and saw the witness looking at him, unbuttoned his pants, lowered them and stooped down as if to ease himself. He then threw something from him into the weeds. The witness thereupon asked Carson "what that man was doing," and Carson replied that he did not know. The witness only noticed the defendant enough to know that he did not come about the platform again, but remained out among the cars until he left. If any one else had approached the place during the day the witness would have seen them, as he had an unobstructed view for miles. The witness was about the platform, but not at the house, from about twelve o'clock m. until five o'clock p. m., when he discovered his loss, which greatly disturbed him.

That night he remembered that he saw the defendant throw something into the weeds, and next morning early he went to examine, and near by, where he saw the defendant squat, he found the top of the tin box, and a little distance off the box itself, in which the money was when it was stolen. The box and top were here exhibited and identified. It was possible, perhaps, but by no means probable, that any one but the defendant could have stolen the money. In accounting for his possession of money afterwards, the defendant said that he got it from his brother, John Thomas, to buy lumber with. At another time he said he got it from Thomas Smalley.

Thomas Carson testified, that when he was on his way to the station, on the day in question, the defendant caught up with him, and rode with him in his wagon to the station, telling him en route that he was going to Houston. They went into the yard at Mr. Leslie's to get a drink, and Mr. Leslie loaned a man four dollars. Then the defendant bought a ticket to Houston. Mr. Leslie put his money away and closed the door. Two men rode off on horseback. Leslie, the witness and the defendant went down to the station. After a time, the defendant asked permission of Leslie to return for more water, and received it, and left,

ostensibly to go to the well at the house. Soon after that, the witness saw the defendant at the gin house, in a stooping posture, and saw him throw something away from him.

Soon after the witness and the defendant got on the train, on their way to Houston, the defendant pulled a wad of paper money out of his pants pockets and assorted it on his knee, separating a twenty dollar bill from other bills. When he had counted this money, he placed the bills together, rolled them up, and placed them in his vest watch pocket. This money he brought to Houston, and said that it was given him by his brother, John Thomas, to buy lumber with. He said nothing previously about having money for any other purpose than to buy his ticket. The witness asked him to give him five dollars in silver for a five dollar bill. He took his silver money out, and said he did not have that amount.

John Thomas, brother of the defendant, testified, for the State, that on the seventeenth of September the defendant asked him for money to pay his way to Houston, saying that he did not want to break his big bills. The witness gave him money with which to buy his ticket, but no more for any purpose.

J. E. Coombs testified, for the State, that on September 19 the defendant bought a watch from him in Houston, giving him a twenty dollar silver certificate bill in payment, on which the witness returned him the change, seven dollars and a half.

Tom Johnson testified, for the defense, that he let the defendant have thirty dollars in bills, in Polk county, Texas, on the ninth or tenth of September.

William Stafford, of Polk county, testified that on the ninth of September, 1882, he let the defendant have a twenty dollar silver certificate bill, taking therefor his, defendant's, order on F. H. Hughes for twenty-three dollars, which the witness produced.

J. C. Reeves, of Polk county, testified that he kept a lumber mill on which the defendant had worked. He saw the defendant leave Polk county on September tenth with a roll of bills in his vest pocket. He had shortly before paid the defendant money for work. The defendant's reputation was good.

The motion for new trial assailed the verdict as unsupported by the evidence, and raised the question involved in the ruling of this court.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, P. J. Appellant was convicted in this case upon evidence wholly circumstantial. A rule of practice settled in this State by decisions which have been iterated and reiterated, is that where the inculpatory evidence is purely circumstantial the charge of the court must expound to the jury the nature and conclusiveness of that character of evidence, to warrant a conviction upon it. It is part of the law applicable to the case, and cannot be omitted from the charge without causing error fatal to the conviction. (*Gonzales* v. *The State,* 12 Texas Ct. App., 657, and authorities cited.)

In his motion for new trial appellant called the attention of the court to this omission in the charge, and the motion should have been granted. (*Bishop* v. *The State,* 43 Texas, 390.)

Because the charge did not present the law of the case, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 17, 1883.