HARRY CLARK V. THE STATE.

*No. 659.    Decided February 9.*

1. **Theft from the Person—Special Instruction.**—On a trial of theft from the person, where the testimony was conflicting as to whether the defendant suddenly and forcibly seized and snatched the money from the party having it in possession, or whether the party delivered the money to him; and it was further a question arising on the evidence as to the time he first conceived the idea of appropriating and did appropriate it; *Held,* error to refuse a special requested instruction, to the effect, that if the money was delivered to him by the owner he could not be convicted of theft from the person, although he afterwards fraudulently appropriated it.

2. **Refused Instructions—Practice on Appeal.**—Where a special instruction which is pertinent to the testimony adduced is refused by the court, and no exception is reserved at the time to its refusal, but the same is made one of the grounds of the motion for a new trial, the judgment will be reversed, if, when viewed in the light of the charge given and the statement of facts, its refusal was calculated to injure the rights of the accused.

APPEAL from the District Court of Tarrant.    Tried below before Hon. S. P. GREENE.

Appellant was indicted for the theft of $10 in money from the person of one Annie Lansky, and at his trial was convicted of said offense, his punishment being assessed at a term of three years in the penitentiary.

As to the main fact involved in the case, it is only necessary to give in substance the testimony of Annie Lansky for the State, and that of the defendant as a witness in his own behalf.

Annie Lansky testified, substantially, that she went out to get a ten-dollar bill of money changed; that she went for that purpose to Neeley's saloon; that while waiting at the side door for some one to come out, she says, "defendant approached me and said, 'Do you want to get some change?' and before I could say anything, snatched the bill from my hand and ran into a saloon.    I did not have time to tell him that he could or could not have the money.    When he went into the saloon with the money I did not make any noise, because I did not think he intended to steal it.    I thought he would bring me back the change, but he did not come, and I commenced to cry, and look for him in the alley."    Later on this witness says, that when she testified before the examining court, immediately after she lost said money, the reason she told her mother that defendant took the money was because she was afraid that her mother would whip her, if she (witness) told her that she gave the money to a stranger.    And later on she says: "I testified in the other court that I waited outside of Mr. Neeley's saloon three or four minutes before I made any noise or began to cry" [meaning after defendant went away with the money].

Upon this point the defendant testified as follows: "I got the $10 about which the witness Annie Lansky testified, from her.    I did not snatch it out of her hand suddenly.    She approached me on the street in front of Neeley's saloon with the bill in her hand.    I asked her if

she wanted change. She said yes, and handed me the bill. I took it and went through the alley to the rear of Neeley's saloon, and went into the saloon through the back alley door. I then formed the intention of keeping the money, and escaped through the rear door of the saloon and ran off. As I went out of the saloon I saw Annie Lansky standing at the entrance of the alley, I suppose waiting for me to return with the change."

*Jackson & Brown* and *Chas. T. Rowland,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of theft from the person. The State's proof is, that appellant seized the money alleged to have been taken from the hand of the owner and ran away with it. Appellant's proof was, that the owner delivered to him the bill to have changed, and that he went into a house to have it so changed, and there conceived the idea of appropriation, and did appropriate it. The appellant asked and was refused a special charge, to the effect, that if the said bill was delivered to him as shown by his evidence, he could not be convicted of theft from the person, although he afterwards fraudulently appropriated it. This refusal was made a ground of the motion for a new trial, and is here assigned as error. This charge should have been given. It presented his defensive theory pertinently, and in direct affirmative terms. Where there is a defect in the charge which is excepted to at the time, or where a special charge is requested and refused, which is pertinent to the testimony adduced on the trial, the judgment is to be reversed. On the other hand, if such exception be not reserved at the time, nor special charges asked covering the defect in the court's charge, a different rule prevails. In this latter state of case the defect in the charge, or failure to give the requested instructions, viewed in the light of the charge given and the statement of facts, must be calculated to injure the rights of the accused. Bishop v. The State, 43 Texas, 390; Willson's Crim. Proc., sec. 2363. The matter of the separation of the jury will not arise upon another trial; therefore that question is not discussed.

For the refusal of the court to give the requested charge, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.