HARRY CONOLY *v.* THE STATE.

1. BURGLARY.—The act of August 21, 1876, amends Article 724 of the Penal
   Code, which partly defines burglary, by adding thereto the words "or
   the crime of theft;" but does not amend or affect Article 725, which
   makes it burglary to break into a house in the day-time, with intent to
   commit a felony.

2. SAME.—Under the Code of this state, burglary may be committed by three
   different modes, distinguishable by the means used; viz., by force, by
   threats, or by fraud.

3. SAME.—The statutory definition of burglary comprises three distinct offenses,
   distinguished from each other by the times of the breaking and entry into
   the house: 1st, when the entry is made at night, with intent to commit
   felony or theft; 2d, by entering in the day-time and remaining concealed
   until night, with intent to commit felony or theft; and, 3d, when the
   entry is made in the day-time, with intent to commit a felony.

4. SAME—INDICTMENT.—In charging burglary, under our Code, it would be
   better practice, though not always necessary, to allege the time of the
   entry—*i. e.,* whether in the day-time or at night.

5. SAME—CHARGE OF THE COURT.—If the imputed intent of a burglarious
   entry was theft, and the indictment be based on Article 724 of the Penal
   Code, it is immaterial, since the act of 1876, whether the value of the
   coveted property was more or less than $20; but, if the indictment was
   based on Article 725, the offense was not burglary if the value of the
   property was less than that amount. In view of the indictment and the
   evidence in the present case, it was error for the court below, in its charge
   to the jury, to ignore the above distinction between the two Articles
   resulting from the operation of the act of 1876.

6. CONFESSIONS.—See this case for statements held admissible in evidence
   against the accused, in view of the circumstances.

APPEAL from the District Court of Limestone. Tried
below before the Hon. D. M. PRENDERGAST.

The indictment charged that, on February 3, 1877, with force and arms, in the county of Limestone and state of Texas, the accused, " then and there, into the store-house there situated of Samuel Richardson, which said store-house the said Samuel Richardson then and there occupied and used, in which said store-house the said Samuel Richardson was then and there doing the business of a retail merchant, and was then and there keeping groceries, liquors, and merchandise in said house, unlawfully, willfully, feloniously, burglariously, and forcibly, by means of great violence opposed to said store-house, did break and enter, with intent then and there the goods, chattels, money and clothing, and personal property of the said Samuel Richardson, in the said store-house then and there being, and then and there of the value of thirty-two dollars, then and there unlawfully, willfully, fraudulently, feloniously, and burglariously to take, steal, and carry away from out of the possession of the owner, without the consent of the owner, and with intent to deprive the owner of the value of the same, and appropriate it to his own use and benefit, five gallons of brandy then and there of the value of three dollars per gallon, five jugs then and there of the value of forty cents each, three bottles of brandy-peaches then and there of the value of one dollar per bottle, three bottles of brandy-cherries then and there of the value of one dollar per bottle, and thirty-six bottles of beer then and there of the value of twenty-five cents per bottle, of the goods, chattels, merchandise, and personal property of the said Samuel Richardson, in the said store-house then and there being found, then and there unlawfully, fraudulently, feloniously, and burglariously did take, steal, and carry away from out of the said store-house and out of the possession of the owner, without the consent of the owner, with intent to deprive the owner of the value of the same, and appropriate it to his own use and benefit, contrary," etc.

The evidence relied on by the state to fix the theft upon appellant consisted of the testimony of M. Crowell and J. Rubles.

Crowell testified that he was deputized by the justice of the peace to arrest the accused and to execute a search-warrant for the stolen property; that he went to the barber's shop of the accused and told him to go over to the justice's office; that the justice desired to see him. Witness did not then serve on the accused, or show to him, the warrant of arrest. That the accused went to the justice's office as directed, and witness went to the house where the accused and his wife lived together, and just outside of the fence found a jug of liquor, and inside of the house a bottle of brandy-cherries and a bottle of brandy-peaches, which he deposited with the justice of the peace. He also stated that the wife of the accused was at the house.

Rubles testified that, after the search-warrant was issued by the justice, and while the accused was at the justice's office, and, as witness supposed, was in arrest or thought himself in arrest, the accused told witness to go and move that whisky from his house, but did not say what whisky he meant. Witness accompanied Special Constable Crowell to the house of the accused, and testified to the same effect as Crowell with respect to the articles there found.

The owner of the stolen property testified that he had examined the liquor and the brandy-fruit found on the premises of the accused; that the bottles of brandy-fruit looked like some of those taken from his house, but he could not identify them by any private mark; that he had compared some of the liquor in the jug with some left in the barrel at his store-house, and found that they did not look alike, but he attributed the difference to the different colors of the tumblers in which he compared them; that afterwards, however, he "got tight" on the contents of the

jug, and was then satisfied the liquor was some of the brandy out of his barrel.

Other witnesses testified to an acquaintance with the barrel and its contents, and to their belief that the liquor in the jug was part and parcel thereof.

The jury found the accused guilty, and gave him two years in the penitentiary.

*R. A. Davis,* for the appellant. The court erred in admitting the testimony of the witness Rubles as to the confession of appellant that there was whisky at his house, which he wished witness to remove, while defendant was in the custody of an officer. Pasc. Dig., Art. 3126 *et seq.* It clearly appears from the evidence of both the witness Rubles and the officer Crowell that, at the time said remarks were made, he was in the custody of the officer Crowell. It is true the officer says he had used no formal words of arrest, and had not shown appellant the warrant; but he had gone to where appellant was, armed with a warrant for his arrest, and there instructed appellant to proceed to the office of the justice of the peace; and it is evident from all the surrounding facts that defendant knew the purpose for which he was being sent before said justice, and that if he disobeyed the officer's instructions, or attempted to escape, that force would be used to prevent his escape and to compel obedience, and he therefore obeyed, and by that act surrendered himself to the control, keeping, and custody of the officer.

Now, I take it that there is no prescribed formula by which an arrest is to be made, nor any particular amount of force, nor indeed any force, necessary to constitute an arrest; but whenever an officer, proceeding with authority for the arrest of a citizen, and for the purpose of arresting him, directs his movements, no matter how mild the terms, and the citizen, knowing or suspecting the purpose, obeys, he is then under the control of the officer and in his custody, and

the very state of mind and feeling is produced on account of which the law excludes his confession. But it may be answered that the stolen property was found in connection with the confession. But this is not the case. The witness Rubles never communicated the remarks of appellant to the officer, nor any one else, until after the goods were discovered. Hence there could have been no connection between the confession and the discovery of the goods.

The verdict of the jury was unsustained by the evidence. The only evidence pointing to the guilt of appellant was his remarks to the witness Rubles, made under arrest, and the fact that property resembling that stolen was found at the house occupied by himself and wife, jointly, she being equally capable with himself of committing the offense.

Now, possession of the fruits of crime, in order to be evidence of guilt, must be exclusive. 3 Greenl. on Ev., sec. 33; Roscoe's Cr. Ev., 6th Am. ed., p. 20, note 4; *Perkins* v. *The State*, 32 Texas, 109.

*George McCormick*, Assistant Attorney General, for the State.

WHITE, J.   The act of August 21, 1876 (Acts Fifteenth Legislature, 231), was intended to, and did, amend solely Article 724 of the Penal Code, which partly defines burglary as known to our law. The amendment consisted in the addition of the words " or the crime of theft " to said Article. Pasc. Dig., Art. 2359. No change was made, or intended to be made, in Article 725 of the Penal Code, and that Article still remains in full force, and reads as follows : " He is also guilty of burglary who, with intent to commit a felony, by breaking enters a house in the daytime."

Under our law as it now is, and in fact has always been, there are three modes by which the offense of burglary may

be committed, which are determined and characterized by the means used, to wit: 1st, by force; 2d, by threats; and, 3d, by fraud.

In addition to the means used, there are also three separate and distinct offenses contained in the definition of burglary, which are characterized and determined by the fact of the time of the breaking and entry into the house, to wit: 1st, when the entry is made at night, with the intent of committing felony or the crime of theft; 2d, by entering a house in the day-time and remaining concealed therein until night, with the intent of committing a felony or the crime of theft; 3d, when the entry of a house is made in the day-time, with intent to commit a felony.

In setting out this offense in an indictment the better practice would be to charge the time of entry (whether by day or night), in connection with the other necessary and requisite allegations. This the indictment in the case we are considering does not do, and yet it would seem that in this regard, under the authority of *The State* v. *Robinson*, 32 Texas, 159, it would be sufficient; though, as in that case, the indictment here is inartificially and inartistically drawn. Nor does the indictment in this case charge in general terms that the entry was made with intent to commit a felony or the crime of theft; but it does set forth particularly the property intended to be stolen, alleging its value at $32, and further charging that it was stolen by the defendant. This is equivalent to averring that the intent was to commit a felony, since under the law theft of property over the value of $20 is a felony. In this view of the case the indictment is good under either Article 724 or Article 725 of the Penal Code. Under Article 724, as amended, the amount of the value of the property has nothing to do with determining the offense. If theft is the object, and the property has any value at all, the offense is made complete by the amendment.

27

The objects and purposes of this amendment are explained and commented upon in the case. of *Sims* v. *The State*, decided at the present term, *ante*, p. 110. As we have seen, however, under Article 725, the breaking, when done in the day-time, is burglary only when the intention is to commit a felony.

The learned judge who tried the case in the lower court seems to have labored under the impression that the amendment to Article 724 comprised and equally applied to Article 725, for he charges the jury that "burglary is constituted by entering a house by force at night, or by breaking in the day-time, with the intent to commit a theft." This definition, given by the court, of burglary is nowhere corrected in any subsequent portion of the charge; on the contrary, the balance of the charge is in conformity with the definition as given.

The definition is not correct when the offense is constituted by a breaking and entry in the day-time. Had the language above quoted, taken in connection with the other portions of the charge, been " by breaking in the day-time, with intent to commit a theft of property over the value of $20," the whole charge would doubtless have been correct.

But it may be contended that the proof shows that the offense was committed in the night, and that therefore the error in the charge of the court could not, and did not, injuriously affect the rights of the defendant. This is not the question we are to determine. The question is : Is the law correctly given? Is the offense correctly defined? Is the law distinctly set forth as applicable to the case? Pasc. Dig., Art. 3059. If not, it must be held to be a good ground of error by this court in felony cases, although the charge in this respect was not excepted to at the time of the trial, nor objected to in the motion for a new trial. *Bishop* v. *The State*, 43 Texas, 390.

Upon the other principal question raised, to the ruling of

the court in admitting the statements and confessions of the defendant to the witness Rubles, we are of opinion that the court did not err.    The defendant, at the time the confessions were made, was not under arrest or in custody.   " A person is said to be arrested when he has actually been placed under restraint, or taken into custody, by the officer or person executing the warrant of arrest."   Pasc. Dig., Art. 2695.    Besides this, the evidence shows that the stolen property was *partly* found in the house from which defendant requested witness Rubles to move it.   Pasc. Dig., Art. 2137; and *Speights* v. *The State*, 1 Texas Ct. of App. 551; *Walker* v. *The State*, decided at the present term of this court.

For the error, however, committed in the charge of the court as heretofore indicated, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*