## HENRY FOSTER *v.* THE STATE.

1. HOMICIDE — RIGHT OF SELF-DEFENSE.— In a trial for murder there was evidence tending to prove that the deceased had made threats to kill the defendant, and that, when shot by the defendant, he had a pistol upon his person and was advancing on the defendant in a violent and threatening manner. *Held*, error to so charge the jury as to condition the defendant's right of self-defense upon his having resorted to all other preventive means, save retreat, before firing upon the deceased. On the contrary, if it reasonably appeared by the acts of the deceased, or by his words coupled with his acts, that it was his purpose to take the life of the defendant, or to do him serious bodily harm, the defendant, before slaying the deceased, was not bound to resort to all other preventive means save retreat, but had the right to slay him instantly and with the most effective means. This right accrued to the defendant not only at the very time the attack was being made upon him, but at any time after some act was done by the deceased showing an evident intent to take the life of the defendant.

2. SAME — CHARGE OF THE COURT.— Instructions to juries should carefully avoid confounding the essential distinctions which the Penal Code, in articles 570 and 572, establishes between those cases in which the assaulted party may slay his assailant without resorting to other means of prevention, and those in which it is incumbent on him to first resort to all such means save retreat. *Kendall* v. *State*, 8 Texas Ct. App. 569, cited on this subject with emphatic approval.

APPEAL from the District Court of Robertson. Tried below before the Hon. W. E. COLLARD.

The indictment charged the appellant with the murder of Phil Arnold on November 14, 1880, by shooting him

with a pistol.   The verdict convicted him of murder in the second degree, and assessed his punishment at confinement in the penitentiary for a term of five years.

Appellant, deceased, and the principal witnesses to the homicide were freedmen.    There was no controversy over the fact that the deceased came to his death from a pistol shot fired by the appellant, and the only issue in the case was that of self-defense.    The killing occurred in the town of Hearne, at night, and in a saloon where the appellant was bar-tender.    J. Casby, testifying for the State, said that he was in the saloon on the occasion, but did not notice when the deceased came in, nor know he was there until he commenced quarreling.    Several others were in the saloon.    The appellant said, "Get out, boys, I want to close up the house;" and witness then remarked, "When negroes get into business, how quick they get stuck up."    Appellant had closed the front doors, and those present were in the back room.    Witness jestingly said to the appellant, "You won't do anything you say you will," and appellant said that his orders were to close and he was going to close, and he went and turned down one of the lamps.    The deceased said, "Oh, you won't do a d—d thing you say you will," and the appellant replied, "You won't do what you say you will do." Deceased said, "I could kick the stuffin' out of you if I wanted to," and, with his hands in his pockets, he started in the direction of the appellant, who fired and the deceased fell.    The ball penetrated the forehead of the deceased, just above his right eye.    The appellant and the deceased were about ten or twelve feet apart when the pistol was fired, and witness thought the deceased was advancing on the appellant, who, however, was standing near the only door through which the deceased could have passed out.    Until the deceased commenced quarreling, the witness did not know there was any difficulty between the parties.    The deceased lived until the

next evening. So far as the witness knew or had ever heard, the appellant was a quiet and peaceable man.

Fred Hawkins, for the State, narrated the facts very similarly to the preceding witness, but imputed somewhat different language to the appellant and the deceased. He stated that the appellant, after telling all to go out, turned down one of the lamps and was standing at the half-open door, with his hand on the door-knob, when the deceased said that he, defendant, was getting too d—n smart, and would not do anything he said he would. The appellant said, "You are a G—d d—d liar." Deceased said he would kick the defendant all over the house, and stepped towards him with his hands in his pockets. When the pistol fired and the deceased fell, he and the appellant were about ten or twelve feet apart, and witness was about three feet from the deceased.

Bob Williams, for the State, testified substantially to the same effect as the two preceding witnesses.

For the defense Lucy Williams testified that a few hours before the deceased was killed he came to where she lived and showed her a pistol. It was loaded and he showed her six extra cartridges, and said, "I intend to kill that d—n Henry Foster before to-morrow morning."

Levi Smith, for the defense, stated that he was one of those who were present and witnessed the homicide. His account of it coincided in substance with that of the State's witnesses, except that he said the deceased had approached within three feet of the defendant when the latter fired.

Ben Franklin, for the defense, stated that he also was present when the defendant shot and killed the deceased. He saw the deceased take a pistol out of his hip pocket and put it in the right hand pocket of his pants. Appellant said, "Boys, get out, I want to close; my orders are to close up." The deceased said, "You are getting d—n smart; you have got no edge for me, but I have a ticket

for you." When this talk passed between them, the defendant was behind the bar, and started to turn down the lamp.

The statement of facts alleges in a general way that the witnesses agreed that the deceased had a pistol in his pocket when he was killed, and that he was a larger man than the appellant.

*J. W. McNutt*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

Hurt, J. The appellant was convicted of murder of the second degree. There was but one error shown by the record. The other assignments are not well taken.

The court below charged the jury that: "If you believe from the evidence that defendant shot and killed Phillip Arnold, but you believe, at the time of the shooting, deceased was making an unlawful and violent attack upon defendant, that created in the mind of defendant a reasonable expectation of death or serious bodily injury from such violent and unlawful attack, and defendant *resorted to all other means to prevent the injury* except to retreat — for he was not bound to retreat, — then, if such unlawful attack was being made at the *very time of the shooting*, the shooting would be self-defense, and if you so find, you will acquit the defendant." The italics are ours.

This charge is radically wrong. If it reasonably appeared by the acts, or by words coupled with the acts, of deceased, that it was the purpose and intent of the deceased to take the life of defendant, or do him some serious bodily harm, defendant was not bound "to resort to all other means to prevent the injury," except to retreat. But on the contrary defendant had the right to slay him instantly without such resort. For if the life of the citizen is imperiled, the law does not require

him to permit his life to remain in jeopardy for a moment, depending upon a successful resort to other, and of course, less effective means than the instant slaying of the aggressor. He may act at once, and with the most effective and deadly weapons.

When may he act or kill the aggressor? Not only at the very time the attack was being made, as was charged by the court below, but *after some act was done* by the deceased showing evidently an intent to take his life. We will not pursue this subject further, believing that it would be very uncertain whether the principles and distinctions set forth and drawn by the Code could be more forcibly and clearly enunciated than was done in *Kendall* v. *State*, 8 Texas Ct. App. 569. In this case, as in the Kendall case, and the cases of Horback, 43 Texas, 424, Blake, 3 Texas Ct. App. 588, and Ainsworth, 8 Texas Ct. App. 532, articles 570 and 572 of the Penal Code were confounded, and the provisions of the latter were injected into the former, and made to control the same. They are, by the Code, reason, and justice, essentially different,— setting forth rules and principles for the government of a state of case quite dissimilar in a great many particulars. This subject has also been handled in a masterly manner in the cases above cited.

The appellant moved for a new trial because of this error, the motion was overruled, and the same error is assigned in this court. *Bishop* v. *State*, 43 Texas, 390.

We are of the opinion that the charge was in direct violation of the Penal Code, and the court below should have awarded defendant a new trial. The judgment is reversed and the cause remanded.

*Reversed and remanded.*