## LEM MADDOX *v.* THE STATE.

1. THEFT — BRAND — CHARGE OF THE COURT.— In a trial for horse-theft the court below instructed the jury, in effect, that a brand was presumptive evidence of ownership. There was evidence of the brand in question, but no proof that it was recorded. *Held,* that the instruction was not merely on the weight of the evidence, but was incorrect in the abstract. An unrecorded brand is neither presumptive nor any evidence of ownership, though it may be admissible on the question of identity.

2. CHARGE UPON THE EVIDENCE.— Trial judges are strictly prohibited by the Code of Procedure from expressing any opinion as to the weight of evidence, and from summing up the testimony or discussing the facts. The spirit of this prohibition may be violated without express comment on the evidence or positive discussion of the facts in proof. The charge should be framed so guardedly as to preclude the jury from drawing from it any inference of the opinion entertained by the judge upon the evidence.

3. SAME.— A charge upon the weight of the evidence is one of the causes for which the Code of Procedure expressly commands the reversal of a judgment of conviction, provided, 1, the charge was excepted to at the time, and 2, if, though not excepted to at the time, it was calculated to injure "the rights" of the defendant. In this connection the defendant's "rights" are, 1, an acquittal unless his guilt is established by competent evidence, beyond a reasonable doubt; 2, to have the law applicable to the evidence given in charge to the jury; and 3, to have the judge refrain from charging upon the weight of the evidence and from discussing the same.

4. SAME — PRACTICE IN THIS COURT.— If an erroneous charge in a felony case was excepted to at the time, or if, though not then excepted to, it was calculated to injure the defendant's rights, the conviction will be set aside by this court without considering the sufficiency of the evidence.

APPEAL from the District Court of Milam. Tried below before the Hon. SPENCER FORD.

This appeal is from a conviction for the theft of a mare alleged to be the property of A. C. Isaacs. The punishment assessed was a term of eight years in the penitentiary.

After proving the want of the owner's consent to the taking of the mare, the State introduced Marion Zellner, who testified in substance that he knew the sorrel mare alleged to have been stolen as the property of A. C. Isaacs. She was branded J I, and ranged on the head of the Lipan creek in Milam county, Texas. The witness had been authorized to look after her, and saw her on her range nearly every time he went on it, up to within two weeks before the defendant drove off his herd of cattle, in December, 1879. In March, 1880, the witness received information that some of his horses were in Houston county, and went there to look after them. He found none of his own, but found the Isaacs mare in McKenzie's Bend, Houston county, in the possession of Church Yarborough, from whom he recovered her and returned her to Isaacs. He had never seen her in the possession of the defendant. The witness asked the defendant why he did not have his horses inspected before he drove them off, and he replied that it was because the law did not require it, and that he "could beat any trick that I could put up on that." Horses were very poor that winter — their hair long and brands hard to distinguish. Jackson and defendant gathered horses together.

Dee Edwards testified for the State that he was at Jackson's pen about the 1st of December, 1879, and there saw a bunch of horses including the Isaacs mare. The defendant was present, and, at Jackson's request, the witness assisted the defendant to drive the bunch, includ-

ing the mare, about six miles to the defendant's herd, near Yarrellton, in Milam county, and they were put in the herd. Jackson, whose brand was † J, was selling some horses to the defendant. Some of the horses driven by the witness and defendant were in that brand. It is the custom of stockmen to "cull" horses before driving them from the range.

H. Dausby testified for the State that in the spring of 1880 he was riding across the prairie in McKenzie's Bend, and met the defendant near a herd of horses which defendant claimed. Witness said: "I see you have one of Isaacs's mares," speaking of the one in question. The defendant asked: "How do you know it is Isaacs's?" The witness told him how he knew, and defendant said: "We bought her from Isaacs,— traded him a cow and calf for her." The witness, before he met the defendant on that day, saw James Hopkins in possession of the herd, including the mare, and had seen the same herd in a pen, near a lake in McKenzie's Bend. He had seen Hopkins in possession of the herd, including the mare, after the defendant left. He had never seen the defendant in the actual possession or control of the animal. The pen was at what was called "Maddox Camp," but the witness did not know of his own knowledge that it was the defendant's camp.

H. C. Jackson testified, for the defense, that he was with defendant when he got up a herd of horses on the 1st of December, 1879, and witness sold him twenty-six head in his brand, † J. The defendant had other horses in the herd in different brands which he claimed to have bought, but witness saw none in the J I brand. The witness culled the herd before delivery, and after delivering them, went home. Blackwell was in camp near by, but if Crout was there the witness did not see him.

The witness remembered when Dee Edwards went with defendant and others with a herd of horses. He

went at the request and in the place of the witness. The J I mare was in that drove, but that was not the drove the witness culled afterwards. That herd stampeded, as the witness was informed, and he gathered some of the same drove. He gathered the herd which Edwards assisted in driving, and drove the J I mare into the pen at that time. They had to pen all horses, and cut out such as were not wanted. The defendant lived within the mare's range, about three miles distant from the witness.

S. M. Crout testified that he was deputy animal-and-hide-inspector in 1879, and inspected a herd of horses driven off by the defendant the evening before he started. There were some horses in the † J brand, some in the W. H., and some in the D. W. brand, and other brands, but the witness saw none in the J I brand, and knows there was none of that brand in the herd.

Lem Blackwell testified that he went with the defendant and his herd from Milam to Houston county in 1879, and became familiar with the horses of the herd; that if one had been lost or got into the herd he would have missed or noticed it; that none were put into the herd after leaving the defendant's house. He had seen none in the J I brand in the herd, and did not think such an one could have been one of the herd. It was possible that a sorrel mare branded J I might have been in the herd and he not known it.

*E. L. Antony*, and *McGregor & Lott*, for the appellant.

*J. H. McLeary*, Attorney General, for the State.

Willson, J. The defendant was convicted of the theft of a mare, and his punishment was assessed at eight years' confinement in the penitentiary.

The indictment charged that the stolen mare was the property of A. C. Isaacs. The evidence showed that the mare was branded J I, which was the brand of said

Isaacs, and that when taken she was running in her usual range in Milam county. Having in view this evidence, the court below instructed the jury as follows: "If the evidence shows that the mare alleged to have been stolen was, at the time she was taken by the defendant (if you find he did take her), branded with the J I brand offered in evidence as the brand of A. C. Isaacs, then if the mare was in Milam county, Texas, on her accustomed range when she was taken, you will presume that she was the property of A. C. Isaacs, unless rebutted by other testimony. Such brand will be, however, only presumptive evidence of ownership, and such presumption may be rebutted by other testimony."

In his motion for a new trial the defendant called attention to this charge, and objected to it because it was upon the weight of evidence, and made this objection one of the grounds of his motion for a new trial. But he did not except to the charge on the trial.

We are clearly of the opinion that the charge is obnoxious to the objection. It distinctly tells the jury that if the mare was branded J I, and was in her accustomed range at the time she was taken, they should *presume that she was the property of A. C. Isaacs.* And it also tells them *that the brand is presumptive evidence of ownership.* Besides being a charge upon the weight of evidence, it is not sound law. A brand is no evidence of title, unless it is a recorded brand. *(Herber* v *State,* 7 Texas, 69.) An unregistered brand is not even presumptive evidence of ownership. An unrecorded brand may be used to aid in establishing the identity of an animal, but not to prove the ownership of the animal. *(Poag* v. *State,* 43 Texas, 454; *Sweat* v. *State,* 4 Texas Ct. App. 617.) It does not appear from the record before us that A. C. Isaacs's brand J I was a recorded brand.

It is expressly required by the law that the judge shall deliver to the jury a written charge in which he shall

distinctly set forth the law applicable to the case; but he shall not express any opinion as to the weight of evidence, nor shall he sum up the testimony. (Code Crim. Proc. art. 677.) In discussing this subject in the case of *Stuckey* v. *State*, 7 Texas Ct. App. 174, Judge Clark uses the following emphatic language: " A charge is unexceptionable only when it states plainly and succinctly the law of the case, and any departure from this plain rule is liable to just criticism, and oftentimes constitutes material error. The measure of the law is not filled by mere abstinence of the judge from any positive expression as to the weight of the evidence, or his refraining from a positive discussion of the facts. The spirit of the law requires him to avoid even the appearance of an intimation as to the facts, and to so guard the language of his charge that no inference, however remote or obscure, may be drawn by the jury as to the facts in evidence from the charge as given them, which is made the law of the case."

It is also expressly provided that, "whenever it appears by the record in any criminal action, upon appeal of the defendant, that any of the requirements of the eight preceding articles (of which art. 677 is one) have been disregarded, the judgment shall be reversed; *provided* the error is excepted to at the time of trial." (Code Crim. Proc. art. 685.) If the objectionable charge had been excepted to by the defendant at the time of the trial, the judgment would necessarily have to be reversed in accordance with the above quoted plain and mandatory statutory provision. *(Bishop* v. *State*, 43 Texas, 390; *Heath* v. *State*, 7 Texas Ct. App. 464.) But there was no exception made to the charge upon the trial, and it was objected to for the first time in defendant's motion for a new trial. It was settled in the case of *Bishop* v. *State*, 43 Texas, 390, that "if a charge is not excepted to at the time of trial, but presented in a motion for a new trial,

which is the next point at which it could be presented, then its consideration by this court would be subject to another and very different rule, which would be whether or not such charge was an error which, under all the circumstances as exhibited in the record, was ' calculated to injure the rights of the defendant,' and which is prescribed as one of the grounds for the granting of a motion for a new trial in the following language: ' Where the court has misdirected the jury as to the law, or has committed any other material error calculated to injure the rights of the defendant.' " The rule above enunciated has been adopted and followed by this court. *(Tuller* v. *State,* 8 Texas Ct. App. 501.) It therefore devolves upon us to determine whether or not this erroneous charge of the court "was calculated to injure the rights of the defendant."

What were those rights ? They were, 1st, to be acquitted of the charge against him unless his guilt was established by competent evidence, beyond a reasonable doubt. 2d. To have the law applicable to the evidence given in charge to the jury. 3d. To have the judge in his charge to the jury refrain from charging upon the weight of the evidence and from discussing the same. These are rights which are guarantied by express law to every person tried for felony. We think the charge of the court referred to bore directly upon each and every one of those rights, and was manifestly calculated to injure them. We do not think that, in arriving at a determination of this question, we are called upon to decide whether or not, in our opinion, the evidence is sufficient to convict the defendant in the absence of the erroneous charge. That would be assuming the province and perrogatives of a jury. It is enough for us to know that the charge of the court was erroneous, and that the error was such an one as was calculated to injure the rights of the defendant.

There are numerous assignments of error which have been ably presented in the brief of the counsel for defendant, but we think it unnecessary to discuss any of them in view of the disposition we shall make of the case, as the errors complained of, if they be errors, are of that character that will in all probability not occur upon another trial. We will say, however, that the only substantial error we have discovered is the one we have discussed, and that for this error alone, we reverse the judgment and remand the cause for a new trial.

*Reversed and remanded.*