[No. 1504.]

JOHN MONTGOMERY *v*. THE STATE.

1. THEFT—CIRCUMSTANTIAL EVIDENCE—CHARGE OF THE COURT.—Where the inculpatory proof consists of circumstantial evidence alone, it is incumbent on the trial court to give in charge to the jury the law governing circumstantial evidence.

2. SAME—NEW TRIAL.—Even though proper instructions on circumstantial evidence are not requested, and no bill of exception is reserved to the general charge because of its insufficiency, the failure to charge the law applicable to circumstantial evidence may be properly raised for the first time on motion for new trial.

APPEAL from the District Court of Tarrant. Tried below before the Hon. A. J. Hood.

The indictment charged the appellant with the theft of two horses, one the property of Josiah Lemons, and the other the property of John Lemons, in Tarrant county, Texas, on the fifteenth day of September, 1882. His trial resulted in his conviction, and he was awarded a term of seven years in the penitentiary.

R. H. Tucker, deputy sheriff of Tarrant county, Texas, testified that on the nineteenth day of September, 1882, the defendant and a man who passed himself under the name of Charles Bullard brought two horses—the two described in the indictment—to the city of Fort Worth, and traded one at a wagon yard, and sold the other at auction for eleven dollars and a half, Mr. M. F. Daniels purchasing it. The witness asked the defendant on that

morning where he got the horses they traded at the wagon yard and on the square. He replied that he and Bullard traded for the horses the day before on the road leading from Fort Worth to Weatherford, at a point about four miles distant from the latter town, and near a house on a hill. He told the witness that his name was John Montgomery, and that he only knew his companion by the name of Charley Robinson. He further stated that he had lived about nine miles north of Weatherford for three or four years; that Robinson lived at his uncle's, near Weatherford, and that he and Robinson had been staying with this uncle for the last three or four days. The witness asked who they knew in Weatherford, and they failed to give names of anybody living in that town. Thereupon the witness arrested the defendant and Bullard for the theft of the two horses described in the indictment.

Cross-examined, the witness stated that the defendant and Bullard were pointed out to him by Henry Schwartz, an auctioneer. The witness recovered the horse the parties traded at the wagon yard, and turned it over to sheriff Maddox. It was a bay horse, quite poor, afflicted with Spanish itch, and branded with a half-circle J. The horse they sold at auction was an unbranded bay, one or two years old.

Sheriff Maddox testified that deputy sheriff Tucker turned one of the horses over to him, and M. F. Daniels gave him the other. After talking to the defendants, he telegraphed John Lemons, in Cooke county, about the horses, and directed his deputy Jimmie Maddox to deliver the horses to John Lemons when he called for them.

Ed. Bates testified that he knew the defendant and Charles Bullard. He last saw them together, previous to this trial, on Sunday, September 17, 1882, at the defendant's father's house in Cooke county, about two and a half miles from old man John Lemons's place. They had no horses with them at that time. Two or three days later, the witness heard that the Lemons horses were missing or had been stolen.

John Hayes testified that he saw the defendant and Bullard at old man John Montgomery's house, in Cooke county, on one Sunday morning about the middle of September, 1882. They had a horse with them which belonged to old man Hensley.

Charles Hensley testified that on a Sunday night in the middle of September, 1882, about eleven o'clock, the defendant and Bullard came to his house and left a horse belonging to witness's

father. Montgomery borrowed a pistol from the witness, and he and Bullard left next morning on horseback, saying they were going off on a trip. The witness lived about forty yards from the road, four miles from John Lemons's, in Cooke county, Texas.

Henry Schwartz testified that in September, 1882, he sold a horse at auction for two young men. Mr. Daniels bought the horse—the only one the witness had ever sold him. Shortly afterwards the witness pointed out the two young men to deputy sheriff Tucker, but, as he did not particularly charge his mind with their appearance, he could not now recognize them. He could not now remember which of the two young men executed the bill of sale.

M. F. Daniels testified that in September, 1882, he bought one of the horses described in the indictment, of Henry Schwartz, an auctioneer. It was the only horse he had ever bought of Schwartz. The witness recognized the defendant as the man who got the money for the horse. The bill of sale was made out by another man. The witness could not identify Bullard as the man who executed the bill of sale. The defendant refused to return the witness the purchase money.

Josiah Lemons, of Cooke county, testified that he owned one and his father the other of the two horses described in the indictment. The defendant lived, in September, 1882, within two and a half miles of the witness, and Bullard lived within a half mile. The witness was satisfied that the defendant knew the horses. He had ample opportunity to know the Lemons brand, as both he and Bullard had lived in Cooke county for two or three years. These two horses ran together, and with no other horses. They were usually turned out in the morning and they habitually came up at night. They disappeared on Sunday evening, September, 1882, and the witness saw no more of them until some ten days later, when they were recovered by his brother John Lemons on a telegram from Sheriff Maddox, of Tarrant county. Until at this trial the witness had not seen the defendant and Bullard since the fall of 1882. He did not give his consent to the taking, nor did his father. His father was about sixty-four years of age, and was sick and too feeble to attend court.

John Lemons corroborated the testimony of his brother Josiah. The State closed.

Miss Mary Montgomery, sister to the defendant, testified that

the defendant and Charles Bullard left her father's house in Cooke county, Texas, on Monday morning, September 18, 1882, going to Williamson county. The defendant rode his own horse, and Bullard rode a horse belonging to the father of the witness.

Mrs. Montgomery, the mother of the defendant, testified that she was with relatives in Williamson county, Texas, in September, 1882. She wrote to her son, the defendant, in Cooke county, to join her in Williamson county.

The motion for new trial complained of error in the refusal of a continuance, and raised the question discussed in the opinion.

*Ball & McCart*, and *Brantly & Powell*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, P. J. As to the direct fact of the taking of the horse, there was no positive testimony. Recent possession is but a circumstance going to the establishment of that fact. Defendant did not admit the fact that he had stolen the horse. On the contrary, he stated he had purchased the horse on Denton creek in Denton county. Then, as to the main fact in issue, the theft of the horse, the evidence was only circumstantial. Such being the case, it was the duty of the court to charge the law applicable to that character of evidence. See *Flores* and *Bernal* v. *The State*, decided at the present term, *ante*, page 665.

It is true no special instruction was asked covering this point; and no bill of exceptions was reserved specifically challenging, on this ground, the charge as given. Still it was made one of the grounds for and directly called to the attention of the court in defendant's motion for new trial, which was overruled. Under the authority of *Bishop* v. *The State*, 43 Texas, 390, the question was one which could properly be raised on and availed of for the first time on motion for a new trial.

For failure of the court to charge the law of circumstantial evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered March 23, 1883.