## No. 2340.

### P. D. Stockholm, Jr., v. The State.

1. Practice—Continuance.—Absence of one of defendant's attorneys from the court when the case is called for trial will not entitle him to a continuance, when it appears that he is represented by other counsel and that no one of his rights is jeopardized.

2. Same—Evidence—Case Stated.—At a former term of the trial court the defendant was tried and convicted of theft, but upon the affidavit of his co-defendant, who was separately tried and acquitted, he was awarded a new trial. Upon this trial, his co-defendant having departed this life, the defendant offered in evidence the affidavit of his co-defendant upon which he secured the new trial. *Held,* that the proposed evidence was properly excluded.

3. Same—Impeaching Testimony—Charge of the Court.—The trial court charged the jury as follows: "When the general reputation of a witness for truth and veracity in the community in which he lives has been attacked, the inquiry must be confined to his general reputation, and not what a particular individual or a few individuals may believe concerning him; and the investigation is to be confined to his general reputation for truth and veracity, and should not extend to his general moral character; and the jury is authorized to refuse to credit and believe any witness whose reputation has been so attacked, or you may credit and believe him as you see fit and proper and believe to be proper to do so, just as though his reputation had not been so attacked; for, as before told you, you are the sole and exclusive judges of the credibility of each and all of the witnesses who have testified before you in the case." *Held,* in view of the evidence in this case, materially erroneous.

Appeal from the District Court of Orange. Tried below before the Hon. W. H. Ford.

The indictment in this case, which charged the appellant with the theft of a cow, the property of William McFaden, in Jefferson county, Texas, was presented in the district court of Jefferson county, but upon the defendant's application the venue was changed to Orange county. The trial in the latter county resulted in the conviction of the appellant and the assessment against him of a term of two years in the penitentiary.

George White testified, for the State, that he lived in Beaumont, Jefferson county, Texas, and in January, 1885, was in the employ of the Beaumont Pasture Company. On the twenty-

sixth day of that month, the witness discovered the defendant and one Cyrus H. Patridge, both of whom he knew well, in the act of butchering the carcass of a heifer that had been recently killed. They had the animal skinned, and two quarters of the meat secured to a horse. Witness came upon them suddenly in a small island of timber into which he went to answer a call of nature. When witness came up on the parties, defendant remarked: "You have caught us." The animal was the property of William McFaden. It was a red heifer, branded M6, connected, the 6 being formed by a right hand curve to the last stroke of the M. This all occurred in Jefferson county, Texas. On his cross examination the witness said that he discovered the parties butchering the carcass of the heifer between nine and ten o'clock a. m., on or about January 26, 1885. He testified on a former trial of this case, and may have testified on that trial that the offense was committed on January 26, 1885, or a day or two before or after that date. He did not recollect that he testified on that trial that it was between nine and eleven o'clock a. m.' Witness had a conversation with Cave Rowley, in Rowley's grocery, about this matter, in February or March, 1885, and, in the presence of C. H. Patridge and others, he told Rowley that he knew nothing damaging to defendant and Patridge. Witness was then under oath administered by the grand jury, and did not feel that he was at liberty to tell any one the truth about the matter. He told J. O. Leonard about the same thing he told Rowley.

James Stewart testified, for the State, that he was the step-son of the witness White, and lived in Beaumont. On or about January 26, 1885, witness went to the prairie to see his said step-father. In his search for his step-father, the witness went into a small island of timber, in which he surprised the defendant and Patridge butchering a heifer. They had it skinned and two of the quarters were on a horse. They ordered witness to "skip out," and witness did so, crossing the bridge over the gully at the island.

William McFaden testified, for the State, that he individually owned the M6 (connected) brand of cattle. He never gave his consent to the defendant, nor to Patridge or anybody else to take or kill the animal described in the indictment. Witness, Kyle and Weiss, composed the Beaumont Pasture Company. The entire business of that concern was under the witness's

management and control. George White was in witness's employ.

William Holland testified, for the State, that he had never been offered money or other consideration by William McFaden to swear on this or any other trial that he saw defendant, Patridge or anybody else butchering the carcass of one of his, McFaden's, or anybody else's animal. He never told Bolen nor anybody else that McFaden had ever made him such an offer.

The State rested.

J. O. Leonard was the first witness for the defense. He testified that C. H. Patridge, deceased, was his uncle-in-law—that is, witness's father and Patridge were brothers-in-law. On or about February 26, 1886, George White told witness that he knew nothing damaging to either defendant or Patridge in connection with this case; that all he knew about it was that he saw Patridge skinning a beef, and that Lawson Gray held Patridge's horse while Patridge did the skinning. Witness knew the location of the island of timber in which White claimed to have seen defendant and Patridge skinning the heifer. It was in plain view of quite a number of occupied houses. Patridge was brought to Beaumont, by his wife, in an ambulance on January 27, 1885. He had been poisoned and was in a dangerous condition. Mrs. Patridge took him home—about fifteen miles from Beaumont—on January 29. Witness knew the reputation of George White for truth and veracity. It was bad, and from witness's knowledge of that reputation, it was such as to render the said White unworthy of belief on oath.

Charles Hemingway testified, for the defense, that he lived in the pasture of the Beaumont Pasture Company. Witness was familiar with the island of timber mentioned by the State's witness. He knew the gully referred to by the witness Stewart, and knew that there was no bridge across it on January 26, 1885. It was washed away by a freshet at least three weeks before that date. The water in the gully where the bridge had been was at least seven feet deep on January 26, 1885. Witness knew also that the defendant worked all day on his house during the twenty-sixth, twenty-seventh and twenty-eighth days of January, 1885. Defendant was at home throughout Saturday and Sunday, January 24 and 25, 1885.

Lawson Gray testified, for the defense, that he lived about a mile from the island of timber referred to by the State's witnesses. On the morning of January 26, 1885, witness went with

defendant and Patridge as far as the said island, on their way
to a small marsh where they had some timber they wanted to
see to.    Patridge and defendant crossed the gully in a boat,
and witness went to the place where the bridge had been, to get
across.    He found the water so high that he had to seek another
and remote way around.    Witness returned to his home about
ten o'clock.    Soon after that, witness saw defendant at work,
taking down a house which witness had sold him.

Nat Smith testified, for the defense, that he lived near the
island of timber described by the State's witnesses.    He saw de-
fendant at work on his house nearly all day on January 26, 1885,
and all day on the next two days.

N. Smith testified, for the defense, that he worked all day on
defendant's house on January 26, 27 and 28, 1885.    Defendant
worked with witness on that house during that time, except for
a short while on the morning of the twenty-sixth, when he went
with Lawson Gray to the marsh to see about some timber.    He
got back to his house about ten o'clock and resumed work.

A number of witnesses called by the defense, testified that
George White's reputation for truth and veracity was so bad
that he was not entitled to belief on oath.    An equally large
number of State's witnesses supported the reputation of George
White for truth and veracity, and declared it to be irreproacha-
ble.

The motion for new trial raised the questions discussed in the
opinion.

*H. W. Greer*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

HURT, JUDGE.    The defense asked a continuance of the case
on account of the absence of the leading counsel, Hal W. Greer,
which was denied, and this was urged as error.    It is not made
to appear in the motion for a new trial, or otherwise, that any
injury resulted to appellant, he having had the services of two
attorneys.    This being so, the refusal of the continuance was
not error.    (Booth v. The State, 4 Texas Ct. App., 217.)

The appellant and one Patridge were jointly indicted and at a
former term, a severance being granted, appellant was convicted
and Patridge acquitted.    The motion for a new trial in appellant's
case was supported by the affidavit of Patridge, and was granted.

Upon this trial the defense offered in evidence this supporting affidavit of Patridge, it having been shown that he was dead. This evidence the court rejected, and this is urged as error. The ruling of the court was correct. We know no rule of evidence holding such a document competent evidence bearing upon any issue in the case.

The court charged the jury as follows: "When the general reputation of a witness for truth and veracity in the community in which he lives has been attacked, the inquiry must be confined to his general reputation, and not what a particular individual or a few individuals may believe concerning him, and the investigation is to be confined to his general reputation for truth and veracity, and should not extend to his general moral character; and the jury is authorized to refuse to credit and believe any witness whose reputation has been so attacked, or you may credit and believe him as you see fit and proper, and believe to be proper to do so, just as though his reputation had not been so attacked; for, as before told you, you are the sole and exclusive judges of the credibility of each and all of the witnesses who have testified before you in the case." Several witnesses having testified, for the defense, in effect, that the reputation of the State's witness, George White, for truth and veracity was bad, it is urged that the charge is objectionable as being on the weight of evidence.

This charge was wrong, and under the peculiar facts of this case it was evidently injurious to appellant. See such a charge discussed in Bishop v. The State, 43 Texas, 394; 1 Texas Court of Appeals, 440; Leverett v. The State, 3 Texas Court of Appeals, 213.

This error in the charge of the court, under the facts of this case, though not excepted to, requires a reversal of the judgment. There are no other errors assigned.

*Reversed and remanded.*

**Opinion** delivered February 1, 1888.